## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. _____

IN RE: APPLICATION OF JUAN MARÍA
RENDÓN AND ROBERTO MAURICE
VENTURA CRISPINO,

**Applicants.**

_____/

### JUAN MARÍA RENDON AND ROBERTO MAURICE VENTURA CRISPINO'S
### VERIFIED APPLICATION FOR
### ASSISTANCE TO INTERNATIONAL AND COLOMBIAN TRIBUNALS

1.      Juan María Rendón and Roberto Maurice Ventura Crispino, both citizens of the

Republic of Italy, (jointly the "**Applicants**") seek to obtain records from Abbott Laboratories, Inc.

("***Abbott***") pursuant to 28 U.S.C. §1782, located in the Southern District of Florida, to be used in

support of complaints to be filed before the Republic of Colombia's ("Colombia") competition

regulator, the Superintendence of Industry and Commerce ("SIC"), in Bogotá D.C., Colombia and

the Colombian civil courts, and in two International Court of Arbitration ("ICC") proceedings with

seat in Colombia -as selected by the Sellers- and in Zurich, Switzerland, respectively. The

Applicants are part of a group of sellers who entered into a stock purchase agreement with CFR

International SpA, as purchaser, and CFR Pharmaceuticals S.A., as warrantor (jointly "CFR"), for

purposes of transferring control over one of the largest pharmaceutical groups in Colombia, named

Lafrancol. As part of this transaction, the parties further executed a security deposit agreement to

guaranty certain contingencies that could arise in connection with their transaction. Unbeknownst

to the Lafrancol sellers, they believe that at the same time that CFR was negotiating with them,

CFR was also negotiating the sale of the Lafrancol to Abbott pursuant to substantially better terms

1

**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

and conditions. Subsequently, Abbott acquired CFR's Latin America operations, including Lafrancol, at a purchase price substantially higher than the price contemporaneously paid by CFR to the Lafrancol sellers. Shortly after its acquisition of Lafrancol, CFR (and later Abbott) also engaged in a pattern of issuing unsupported notices of claim under the underlying agreements aimed at blocking the Lafrancol sellers from accessing the aforementioned security deposit. In light of CFR's unlawful conduct, all or part of the Lafrancol sellers have instituted arbitrations proceedings to enforce their rights under the underlying agreements related to the Lafrancol transaction. Moreover, the Lafrancol sellers contemplate to file complaints before the SIC and the Colombian civil courts in order to bring to their attention the anti-competitive effects of CFR's and Abbott's actions. Further, the Applicants and the other Lafrancol sellers also intend to institute proceedings to be compensated for the damages caused by CFR, Abbott, and Michael and Viviane Ventura Buring (the "Buring Siblings"), who Applicants believe have maintained contacts among themselves related to the underlying claim that CFR and Abbott has leveraged to maintain the Security Deposit (as defined herein) blocked.

2.      Upon information and belief, Abbott acquired CFR in 2014 and has directed and supervised CFR (or its successors) from Abbott's Latin American headquarters in Miami, Florida. Likewise, Viviane Ventura Buring, one of the Buring Siblings, who Sellers believe to have sustained contacts with CFR and/or Abbott in connection with the Security Deposit blocked, resides in Miami, Florida. Upon information and belief, CFR, Abbott and Viviane Ventura Buring would have had contacts in Miami in connection with the claims that have been portrayed as justifications to block the Applicants –and the other Lafrancol sellers- from accessing the Security Deposit. Moreover, a substantial part of CFR and Abbott's negotiation of the purchase of Lafrancol occurred in Miami.

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

3.     Applicants require information regarding Abbott's indirect acquisition of Lafrancol (by means of the 2014 purchase of CFR) and CFR's actions, and later Abbott's, in blocking the disbursement of the Security Deposit to the Lafrancol sellers.

4.     This Court has express authority pursuant to 28 U.S.C. § 1782 to assist Applicants in obtaining evidence relating to the transaction between the Lafrancol sellers (including Applicants) and CFR, and to provide the arbitral tribunals and the Colombian authorities with relevant and useful information to allow Applicants and their co-sellers to prosecute their claims and complaints against CFR and its successors.

5.     Accordingly, Applicants respectfully request this Court to enter an order compelling Abbott to produce, *inter alia*, (i) all communications between CFR and Abbott concerning the Lafrancol acquisition, (ii) all documents and information related to Abbott's indirect acquisition of Lafrancol and the terms and conditions of this transaction, (iii) all communications concerning the dissolution or winding-down of CFR and its replacement with one or more Abbott entities, (iv) all communications between CFR and Abbott, between CFR's former managers and/or directors and between CFR, Abbott (directly and indirectly) and third parties, pertaining to the Security Deposit, and (v) all communications between CFR, Abbott and the Buring Siblings. All these documents are relevant with respect to (i) CFR's precontractual breach of its duties when negotiating Lafrancol's Stock Purchase Agreement and (ii) CFR and Abbott's post-closing actions concerning the Security Deposit. The grounds for this Application are detailed below and in the attendant Memorandum of Law in Support of Juan María Rendón and Roberto Maurice Ventura Crispino's Application for Assistance to International and Colombian Tribunals.

## I.     PARTY, JURISDICTION, AND VENUE

6.     Juan María Rendón is an Italian citizen residing in Lisbon, Portugal.

7.     Roberto Maurice Ventura Crispino is an Italian citizen residing in Panama City, Republic of Panama.

8.     Applicants are "interested persons," as that term is used in 28 U.S.C. § 1782, because, without limitation, they are part of the selling group in several agreements between this selling group and CFR related to the sale of Lafrancol and such selling group. One of the Lafrancol sellers, Atavida Holdings GmbH ("Atavida"), a Swiss limited liability company, has already initiated an arbitration proceeding against Abbott Laboratories (CHILE) HOLDCO SpA, Abbott Laboratories, S.A. (Spain), Abbott Laboratories S.A. (Switzerland) and Abbott Laboratories, Inc. (jointly the "Abbott Entities") as successors of CFR. The arbitral seat selected by Atavida for this arbitration is Bogotá, Colombia. The selling group also intends to initiate, imminently, a second arbitration against the Lafrancol transaction's escrow agent, Credit Swiss, if orders issued in the first arbitration are not complied with.

9.     Applicants are beneficial owners of Atavida.

10.     The Lafrancol selling group, including Applicants, will initiate proceedings before the SIC and  the Colombian civil courts, pursuant to Colombian law, seeking (i) the declaration of the anticompetitive effects of CFR's actions in the Colombian market, and the corresponding sanctions, compensation and relief arising thereof, and (ii) compensation for the damages caused by CFR's breach of its duties during the negotiation of the Lafrancol Stock Purchase Agreement, which hindered the Sellers from selling its Lafrancol stock at its real market value.

11.     The Sellers also intend to file an action seeking damages caused by CFR's and Abbott's contacts with the Buring Siblings with respect to the claims that have been unduly portrayed as justification for the retention of the Security Deposit constituted under the agreement for the sale of Lafrancol, deposit that should have otherwise been released to the Sellers.

4

12.     This Court has subject-matter jurisdiction over this cause pursuant to 28 U.S.C. §1782, as this submission is an application for assistance to a foreign tribunal to obtain discovery from individuals or entities located in the United States.

13.     Furthermore, this Court has specific personal jurisdiction over Abbott as the 2014 transaction between CFR and Abbott was negotiated, executed and performed partially in Miami, Florida, and Abbott, through several of its corporate agents and representatives, regularly and systematically visited the State of Florida in connection with its acquisition of CFR, including, but not limited to, regularly attending business meetings in Miami with CFR officers, attorneys and representatives to discuss and negotiate the purchase of CFR. Furthermore, CFR and Abbott's post-contractual ruse aimed at blocking the Lafrancol sellers from accessing the Security Deposit with Credit Swiss was partially planned and executed from Abbott's Latin American headquarters in Miami, Florida. Finally, Lafrancol's acquisition was ultimately executed at CFR's general manager's offices in Miami, Florida. Furthermore, Viviane Ventura, one of the Buring Siblings who, upon information and belief, had contacts with CFR and/or Abbott in connection with the claims that have been alleged as basis for freezing the Security Deposit, resides in Miami, Florida, and her contacts with CFR and/or Abbott partially took place in this city.

14.     Venue in this district is appropriate pursuant to 28 U.S.C. §1782, because discovery is being sought from an entity and individual located in this judicial district and the requested information is located within this judicial district.

## II.     GENERAL ALLEGATIONS

### A. THE LAFRANCOL TRANSACTION

15.     The Lafrancol pharmaceutical group ("Lafrancol") was established in Colombia in 1911 as a distributor of pharmaceutical products. In 1945, Lafrancol opened its first plant in

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

Santiago de Cali, Colombia. By 2012, Lafrancol was considered the largest pharmaceutical company in Colombia.

16.     CFR is or was a Chilean pharmaceutical company engaged in the development, production, and sale of pharmaceutical drugs in 15 Latin American countries such as Argentina, Bolivia, Chile, Costa Rica, Ecuador, Paraguay, Peru, Venezuela and others and in Vietnam. The company is or was one of the largest pharmaceutical companies in Latin America. According to publicly available information, both CFR International SpA and CFR Pharmaceuticals S.A. are currently dissolved and their successors would be Abbott affiliates.

17.     On or about August 10, 2012, Esther Ventura de Rendon, Roberto Maurice Ventura Crispino, Bella Ventura de Mitrotti, Joyce Ventura de Duran, Juan María Rendon Gutierrez and the Swiss limited liability company, Atavida Holdings GmbH (the "Sellers"), entered into a stock purchase agreement with CFR (the "Stock Purchase Agreement"). A true and correct translated copy of the Stock Purchase Agreement is here attached as Exhibit "1".

18.     Pursuant to the Stock Purchase Agreement, CFR acquired –directly or indirectly- a 100% interest of Lafrancol, which included the following entities:

- Laboratorio Franco Colombiano Lafrancol S.A.
- Lafrancol Internacional S.A.S.
- American Generics S.A.S.
- Gamar S.A.S.
- Naturmedik S.A.S.
- Uquifa S.A.S.
- Focus S.A.S.
- Pauly Pharmaceutical S.A.S.
- Lafrancol Perú
- Lafrancol Guatemala
- Lafrancol Ecuador
- Lafrancol República Dominicana
- Doral Investments International Inc.

19.     At the time of execution of the Stock Purchase Agreement, Lafrancol owned three manufacturing plants in Cali, Colombia as well as a substantial marketing and distribution network in all the major Colombian cities. Furthermore, Lafrancol controlled the Colombian market for combined calcium antagonists (C08B). Lafrancol was also the market share leader in several pharmaceutical drug categories in Colombia, including hormonal contraceptives, erectile disfunction drugs, bone structure and mineralization drugs (M05B) and anxiolytics (N05B).

20.     On the other hand, CFR's participation in the Colombian market was minimal. Prior to entering in the Stock Purchase Agreement, CFR only owned an entity called Laboratorios Synthesis with marginal presence in this market.

21.     Therefore, with its acquisition of Lafrancol, CFR, already owner of Synthesis, acquired a dominant position in several pharmaceutical categories in Colombia such as hormonal contraceptives, calcium antagonists and others.

22.     The purchase price agreed to Lafrancol was $562,000,000.00. Pursuant to the Stock Purchase Agreement, the Sellers and CFR agreed to establish a security deposit in the sum of $25,000,000.00 (the "Security Deposit"). On or about December 10, 2012, the Sellers, CFR International SpA and Credit Suisse Solution Partners AG –the latter as escrow agent- entered into an escrow agreement (the "Escrow Agreement"). A true and correct copy of the Escrow Agreement is here attached as Exhibit "2".

23.     Section 9.04 of the Stock Purchase Agreement included an indemnity provision obliging CFR to indemnify and hold the Sellers harmless for any losses suffered or incurred by CFR in connection with any (1) misrepresentation or inaccuracy of Sellers' representations or covenants or (2) breach of the commitment or obligations of any of the Sellers under the Stock

7

**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

Purchase Agreement. A similar indemnification provision was included in CFR's favor for any misrepresentation or breach by the Sellers.

24.     Section 9.06(a) of the Stock Purchase Agreement provides the mechanism to submit claims for losses under Section 9.01. In short, Section 9.06.(a) requires the indemnified party to send a written notice to the indemnifying party stating the nature of such claim or complaint and the estimated amount, together with copies of the relevant supporting documentation. Moreover, Section 9.06(d), states that an indemnity notice under Section 9.06(a) would be deemed final and binding when (1) the indemnifying party failed to object the claim or complaint; (2) in case of a third party claim, once a settlement having the effect of *res judicata* is accepted by the indemnifying party or by a decision issued by a competent judicial authority in proceeding where the indemnifying party was given an opportunity to participate; and (3) in case of a indemnified party claim, once a final decision is issued by an arbitral tribunal established in accordance with the dispute resolution clause of the Stock Purchase Agreement.

25.     The parties agreed that the Security Deposit should be released by the escrow agent to the Sellers in accordance with the following provisions, subject to provisions on third party or indemnified party claims:

- 50% of the Security Deposit would be released after twelve months following the date of execution of the Escrow Agreement.
- 25% of the Security Deposit would be released after eighteen months following the date of execution of the Escrow Agreement.
- 25% of the Security Deposit would be released after twenty-four months following the date of execution of the Escrow Agreement.

26.     With respect to third party or indemnified party claims, the Escrow Agreement included the conditions pursuant to which a party could notify a claim to the other party and how the escrow agent would make a payment from the Security Deposit.

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

**B. CFR'S UNLAWFUL ACTIONS IN BLOCKING THE SECURITY DEPOSIT**

27.     Notwithstanding the clear and unequivocal contractual provisions contained in Section 9.06 of the Stock Purchase Agreement, since July 2013, shortly after the execution of the Stock Purchase Agreement and the Escrow Agreement, CFR submitted to the Sellers a series of false allegations by means of purported third party and indemnified party claims. These claims, 16 in total, failed to comply with the definition of third party and indemnified party claims agreed by the parties in Section 9.06 of the Stock Purchase Agreement.

28.     Despite that CFR's notices of claim failed short of satisfying the conditions for third party or indemnified party claims as set forth in the Stock Purchase Agreement and the Escrow Agreement relevant provisions, based on them CFR requested the escrow agent to freeze the amount held in the Security Deposit on the basis of these impermissible notices. The Sellers objected to each of CFR's claim individually, pointing out to their clear lack of basis and support.

29.     As a result of CFR's impermissible claims, more than six years after the execution of the Stock Purchase Agreement, the escrow agent has yet to disburse a single amount from the Security Deposit to the Sellers.

30.     CFR's many impermissible claims include (without limitation) the following:

(a) Rifamicina Claim dated July 8, 2013 for approx. COP $60,000,000.00: Submitted by CFR in connection with an administrative action initiated by Colombia's INVIMA with respect to the production, manufacturing and commercializing of Rifamicina without prior approval. The Sellers have objected to this claim, *inter alia*, on grounds that (a) the underlying Claim is not final and non-appealable and therefore no Losses have resulted therefrom, (b) it has not been determined that the Claim shall be indemnified under the

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

Stock Purchase Agreement, (c) CFR submitted information that allegedly supports this claim outside the term set forth by the Stock Purchase Agreement, and (d) CFR intentionally allowed that the deadline to appeal INVIMA's ruling expired before notifying the Sellers of such ruling and the amount of the Claim has not been finally determined. A copy of the July 8, 2013 letter is here attached as Exhibit "3".[1]

(b) Sun Pharma Claim dated August 28, 2013 for COP $3,774,033,813.25: Submitted by CFR in connection with Sun Pharma's termination of a distribution agreement with Lafrancol S.A.S. because of a change of control in the latter entity. The Sellers have objected to this claim, *inter alia*, because (a) it has not been determined that the underlying Claim shall be indemnified under the Stock Purchase Agreement, (b) the underlying Claim is not final and non-appealable and therefore, no Losses have resulted therefrom, (c) the term to submit the claim had expired under Section 9.06 of the Stock Purchase Agreement, (d) the claim cannot proceed as it does not involved a "procedure" under Section 9.06 of the Stock Purchase Agreement, and (e) CFR failed to establish an indemnifiable amount pursuant to Section 9.06 of the Stock Purchase Agreement. CFR was so conscious of the absolute lack of merits of this claim, that it withdrew it, only three months later, but not before clearly warning the escrow agent that "no portion of the amounts held in the Escrow Guarantee Account shall be released to the Sellers on the First Interim Release

---

[1] Per information provided by CFR itself, the sanction finally imposed to Lafrancol as a result of this investigation amounted to COP$16.702.500, not even a 30% of the estimated loss initially alleged by CFR.

**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

Date, insofar as several other Claim Notices timely filed by the Purchaser remain valid and for a total amount that exceeds the amounts currently held in the Escrow Guarantee Account." A   copy of CFR's notice of claim and withdrawal dated August 30, 2013 and December 9, 2013, respectively, are here attached as composite Exhibit "4".

(c) American Generics claim, dated September 27, 2013 for COP$1.461.826.938: CFR submitted this claim for alleged losses arising out of a regulatory investigation initiated by the Colombian tax authority against American Generics S.A.S. for the income tax return of 2011. The Sellers objected to this claim arguing that (a) it has not been determined that the underlying claim shall be indemnified under the Stock Purchase Agreement, (b) the underlying claim is not final and non-appealable and therefore no Losses have resulted therefrom, (c) that the claim is based on mere speculations as the tax authority had only issued a request for information and not a sanction against the company. The lack of merits of this claim was later acknowledged by CFR, who withdrew the claim in its entirety. A copy of CFR's notice of claim and withdrawal dated October 3, 2013 and December 9, 2013, respectively, are here attached as composite Exhibit "5".

(d) SAP claim dated August 27, 2013 for COP $146,787,262,837.00: CFR submitted this claim alleging that the adoption of SAP affected the valuation of inventories without the prior approval of the Colombian tax authorities. The Sellers objected to this claim  on the basis that (a) it has not been determined that the underlying Claim shall be indemnified under the Stock Purchase

Agreement, (b) the underlying Claim is not final and non-appealable and therefore no Losses have resulted therefrom, (c) the claim is belated and baseless, (d) during its due diligence, CFR knew of the impact of SAP in Lafrancol's inventory valuation, (e) no procedure has been initiated in connection with the claim, and (f) the claimed amount does not constitute losses under the relevant agreements. The absolute absence of merit of this claim was shown by the fact that its amount was later reduced to less than 25% and, three months later, was completely withdrawn by CFR, without any factual change that could motivate it and with the same warning included in the Sun Pharma claim withdrawal. A copy of CFR's notice of claim and withdrawal dated August 30, 2013 and December 2, 2013, respectively, are here attached as composite Exhibit "6".

(e)   The Buring Siblings claim dated August 30, 2013 for US $36,900,590, (the "Settlement Claim Notice"):  Shortly after the parties entered into the Stock Purchase Agreement, the Buring Siblings, former minority shareholders of Lafrancol, filed a conciliation hearing request against some of Lafrancol's majority shareholders, Ms. Esther Ventura and Applicant Rendón (the "Ventura Buring Dispute") and Lafrancol.  CFR submitted this claim alleging the Sellers failed to disclose the existence of prior settlement agreements with the Buring Siblings. The Sellers objected to this claim (without limitation) on grounds that (a) it had not been determined that the underlying claim shall be indemnified under the Stock Purchase Agreement, (b) the underlying claim is not final and non-appealable and therefore no losses have resulted therefrom, (c) it

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

constitutes a dispute between former shareholders of Lafrancol and will not have any effects against the company itself, and (d) the claimed amount does not constitute losses under the relevant agreements. Although the Buring Siblings' conciliation hearing request against Lafrancol was closed, CFR maintained that as long as there was a legal right to reinitiate this action, the Security Deposit should remain frozen. In reality, CFR knew of a potential conflict with the Buring Siblings prior to the execution of the Stock Purchase Agreement per information provided by the Sellers, and they also knew of its lack of potential to affect Lafrancol, so such a third party claim could not, by any means, entitle CFR to any kind of compensation.

31.    On December 23, 2013, CFR sent what purported to be a second notice of claim (dated December 18, 2013) with respect to the Ventura Buring Dispute. This time, the claim was based on a counterclaim filed against Lafrancol by the Buring Siblings in an ICC arbitration commenced and eventually won by Applicant Rendón and Ms. Esther Ventura. Based on this notice, and "as a follow up to the Settlement Claim Notice", CFR requested the Escrow Agent to retain "the total amount held in the Escrow Guarantee Account mentioned in the Settlement Claim Notice". *See* CFR's communication received on December 23, 2013, here attached as Exhibit "7". On December 26, 2013, the Seller objected to this notice since, as with the Settlement Claim Notice, the counterclaim did not represent a contingency for CFR. *See* Sellers' communication sent on December 26, 2013, here attached as Exhibit "8". This notice of claim was maintained by CFR, even though this counterclaim was withdrawn by the Buring Siblings within the ICC arbitration.

**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

32.     In light of the continuing existence of this notice of claim despite the Buring Siblings' withdrawal of the counterclaim, on September 8, 2014, the Sellers submitted a claim to CFR notifying the breach of Sections 9.04 and 9.06 of the Stock Purchase Agreement, alleging that CFR had acted in an unlawful and abusive manner by submitting impermissible claims and was acting in bad faith by asserting the existence of the Ventura Buring Dispute as ground for the retention of the Security Deposit.

33.     Since the Security Deposit continued to be retained, on December 29, 2014, the Sellers reaffirmed to CFR that *–inter alia-* the Security Deposit was to be released on December 12, 2013, June 12, 2014, and December 12, 2014, respectively, and that the escrow agent's retention of the Security Deposit obeyed to unlawful requests by CFR; therefore demanding the immediate disbursement of the Security Deposit.

34.     On March 31, 2016, the Sellers felt compelled to file a new notice to CFR concerning the several improper claims submitted against the Security Deposit and demanded again that CFR withdrew the remaining party or third-party claims so that the Escrow Agent could release the Security Deposit. However, the Security Deposit continued to be retained.

35.     Significantly, on September 28, 2016, an ICC arbitral tribunal resolved the Ventura Buring Dispute in favor of Applicant Rendón and Ms. Esther Ventura. This award definitely confirmed all objections raised by the Sellers against CFR's third party claim and its absolute lack of merit. Moreover, on January 17, 2019, the Supreme Court of Colombia rejected a motion to vacate this ICC arbitral award filed by the Buring Siblings. Therefore, the Ventura Dispute was ultimately dismissed entirely with *res judicata* effects.

36.     Thus, although none of the third party or indemnified party claims had any real grounds whatsoever, by 2019, all the potential issues concerning the several improper notices of

**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

claim filed by CFR had disappeared. The Sellers expected that CFR and Abbott would come to terms in connection with the unjustifiable retention of the Security Deposit and would release it with no delay. However, CFR and Abbott failed to act in this regard, even despite the issuance of the Supreme Court of Colombia's 2019 decision confirming the 2016 ICC arbitral award mentioned above, of which the Sellers opportunely notified CFR and Abbott.

37.     Strikingly on the contrary, even after the issuance of the Colombian Supreme Court ruling in January 2019, CFR, instead of notifying the escrow agent that there were no reasons preventing the release of the Security Deposit, on August 23, 2019 sent a letter to the Sellers now inquiring about a criminal complaint filed against Ms. Esther Ventura contemporaneously with the Ventura Buring Dispute. A copy of the August 23, 2019 letter is here attached as Exhibit "9". Remarkably, CFR asserted that the release of the Security Deposit now was contingent on receiving this irrelevant information. The reality is that neither the Ventura Buring Dispute nor the criminal complaint ever had the potential to affect Lafrancol nor CFR, and it became blatant with the issuance of both the 2016 ICC arbitral award and the Supreme Court of Colombia's judgment confirming this arbitral award. Being aware of these judicial decisions with *res judicata* effect, CFR still improperly attempts to justify the freeze of the Security Deposit, now with the insignificant existence of a criminal investigation against Ms. Esther Ventura.

38.     By their actions, CFR accomplished the freezing of the Security Deposit, which, by now, should have been released in full. At the time of this Application, CFR has failed to either withdraw its claims or request to unfreeze the Security Deposit, so that the funds in the escrow agent's possession are released as provided by the Stock Purchase Agreement and the Escrow Agreement. CFR's scheme to block the Security Deposit has had as result that the effective purchase price of the Lafrancol's stock was reduced in the sum of $25,000,000.00.

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

39.     This situation has forced Atavida to initiate an ICC arbitration pursuant to the Stock Purchase Agreement and to evaluate further actions under the Escrow Agreement, should the orders issued in the arbitration pursuant to the Stock Purchase Agreement are not opportunely complied with and to denounce CFR's and Abbott's anti-competitive actions to the Colombian authorities and to seek the compensation that this conduct caused.

40.     In addition to the foregoing, upon information and belief, CFR and more recently, Abbott, would have established contact with the Buring Siblings with respect to the underlying Colombian criminal investigation, which has recently been used as basis for maintaining the Security Deposit blocked.

41.     This situation has led the Sellers to evaluate commencing actions against the Buring Siblings and CFR (now succeeded by Abbott entities) aiming at claiming the compensation of the damages that these contacts would have caused them.

## C. CFR'S OMISSIONS WITH RESPECT TO ABBOTT'S INTEREST IN LAFRANCOL

42.     In addition to its detrimental conduct with respect to the Security Deposit, CFR omitted to disclose to the Sellers critical information towards the execution of the Stock Purchase Agreement.

43.     As already indicated in this Application, CFR's presence in Colombia was minimal prior to acquiring Lafrancol. On the other hand, Lafrancol was the largest pharmaceutical company in Colombia.

44.     A few months after the closing of the Lafrancol transaction, it was revealed that CFR had formally initiated conversations with Abbott to resale the Lafrancol stock to the latter entity. However, upon information and belief, in reality, the conversations between CFR and Abbott had begun prior or simultaneously to the execution of the Stock Purchase Agreement.

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

Pursuant to these conversations, CFR would have already measured up Abbott's interest in the Latin American market, including a strong interest in the Colombian market. Therefore, CFR would have come to the conclusion that by adding Lafrancol –and consequently, the Colombian market- to its list of assets, it would secure substantially greater leverage in its negotiations with Abbott. Notwithstanding these intentions at the time of negotiating the Stock Purchase Agreement, they were not disclosed to the Sellers.

45.     In or about May 2014, CFR and Abbott concluded the indirect sale of the Lafrancol stock. Upon information and belief, the price allocated to the Lafrancol stock by Abbott and CFR amounts to more than $1 billion United States Dollars.

46.     CFR's lack of candor impeded the Sellers from properly valuing their stock and reach closer to the stock's real market value in their transaction with CFR. This real market value would correspond to the price given by Abbott to the Lafrancol stock to the extent that it was Abbott which in reality would be the end-buyer of this stock.

47.     By acting in this manner, CFR would have secured a lower price than Lafrancol's real market value and, it allowed CFR to receive a profit represented in the price difference, all while preventing the Sellers from receiving such value.

48.     Therefore, CFR's disclosure omissions during the negotiation of the Stock Purchase Agreement would constitute a breach of the principle of good faith as adopted in Colombian law.

49.     Article 871 of Colombia's Commercial Code states:

> Contracts shall be executed and performed in good faith and, as such, oblige not only to what it is expressly agreed upon, but also to all that arises naturally from them, pursuant to the law, the uses or equity.

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

50.     Moreover, pre-contractual liability is provided in article 863 of the Commercial Code:

> Parties shall proceed in good faith without fault in the pre-contractual stage, being responsible to pay for any the damages caused.

51.     To the extent that CFR (or its successors) breached its duty of good faith, the Sellers would have then suffered damages from this breach as well as the loss of opportunity of selling their stock at its true and real market price.

### D.  **THE FOREIGN PROCEEDINGS**

52.     The Stock Purchase Agreement contains the following arbitration agreement in its Section 12.06:

> Any dispute derived from, or related to, this Agreement shall be resolved definitely in accordance with the Arbitration Rules of the International Chamber of Commerce by three arbitrators appointed under such Rules. The arbitration court shall have its seat alternatively in the city of Miami, Florida, United States, or in New York City, New York State, United States, upon selection of the Buyer as summoning party, or in any other city the Buyer chooses as summoning party of such arbitration. Once summoned in any of the cities under the previous rue, such city shall the city of arbitration for every dispute derived from, or related to, this Agreement. Even if the arbitrations are initiated in different seats in accordance with this clause, this shall not prevent the consolidation of arbitration proceedings.

53.     On January 28, 2020, Atavida filed a request for arbitration against the purported successors of CFR -in view of its dissolution- seeking a declaration that (1) CFR has breached the Stock Purchase Agreement, and (2) CFR has breached its obligations with respect to the Security Deposit and the indemnification provision of the Stock Purchase Agreement. As neither CFR nor Abbott ever notified the Sellers as to the dissolution of the CFR parties executing the SPA and the Escrow Agreement as buyers and guarantor, and who are the proper CFR successors, Atavida was forced to include all the relevant Abbott entities in its request for arbitration. In its initial filing in

**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

the pending arbitration, Abbott has asserted that it will object to the tribunal's jurisdiction *ratione personae* and *ratione materiae*.

54.     Section 12.06 of the Stock Purchase Agreement provides that the seat of the arbitration may be Miami, New York or any other city that CFR as Claimant chooses. The Sellers consider that the seat's choice is vested upon whoever acts as Claimant in the corresponding arbitration. Therefore, in its request for arbitration, Atavida, in its capacity as Claimant, has proposed Bogota, Colombia as the seat of the arbitration. In case of disagreement by the Defendants, the ultimate decision as to the seat of the arbitration shall be made by the ICC, which has its seat in Paris, France. At this stage, the Sellers submitted their request for arbitration to the ICC's headquarters in Paris.[2]

55.     In its request for arbitration, Atavida alleges that CFR (or its successors) have sought to accomplish a reduction of $25 million in the purchase price of Lafrancol without the Sellers' consent. Atavida further alleges that CFR's actions have caused and are causing substantial injury to the Sellers since the moment the Security Deposit was not disbursed.

56.     The Escrow Agreement includes the following arbitration clause:

> 19. Any dispute, controversy or claim arising out of or relating to this Agreement, shall be resolved in accordance with the rules of the International Chamber of Commerce by three arbitrators appointed in accordance therewith. The place of arbitration shall be the City of Zurich, Switzerland.

57.     Accordingly, in case the orders issued in the arbitration already filed are not complied with by the Escrow Agent, the Sellers' also intent to initiate an arbitration against Credit Suisse Solution Partners AG, seeking a declaration that CFR's notices of third party or indemnified

---

[2] In light of the confidentiality of the arbitration proceeding, Applicant has not attached the demand for arbitration to this Application. Should the Court wish to review the demand for arbitration, Applicant is willing to file it under seal or as otherwise directed by the Court.

**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

claim are invalid and that Credit Suisse Solution Partners AG, as escrow agent, is under the obligation of releasing the Security Deposit to Sellers.

58.     The Sellers further intend to file a complaint before the SIC, pursuant to Law 1340, 2009, in order to seek the declaration of the anticompetitive effects of CFR's actions in the Colombian market, and the corresponding compensation and sanctions.

59.     The procedure to investigate restrictive trade practices (anticompetitive agreements, abuse of dominance and other unilateral acts) is established primarily in Article 52 of Decree 2153, 1992 which was amended by Law 1340, 2009 and Decree 19, 2012.[3] This procedure has basically three stages: i) preliminary inquiry, ii) formal investigation and iii) final decision. The SIC may initiate a preliminary inquiry based on a complaint from a third party. In this phase, the SIC reviews the information submitted or the complaint filed and determines whether or not to open a preliminary inquiry or to dismiss the complaint. The SIC has legal powers to request for information (all kind of documents including digital documents), inspections, take depositions and order, practice and collect all the information required to verify compliance with pro-competition

---

[3] Article 52 provides in relevant parts: "To determine if there is an infraction to the law to promote competition and the restrictive trade practices set forth in this decree, the Superintendent of Industry and Commerce shall initiate on its own or by request of a third party and proceed with a preliminary inquiry, which results shall determine the need to proceed with an investigation.

Upon opening an investigation, the investigated party shall be notified personally so that it can request or submit any evidence in its favor. During the investigation the requested means of evidence shall be completed as well as those that competent officer may deem relevant.

Complete the investigation a report shall be submitted to the Superintend concluding whether an infraction has occurred. From this report, there will be notice to the subject of the investigation and interested third parties.

During the investigation, the Superintendent of Industry and Commerce shall close the investigation when in its judgment the accused party would have provided the sufficient guaranties of suspending or modifying the conduct for which it is being investigated.

For anything not provided in this article, the Administrative Procedure Code shall be applicable."

regulations (*See* Article 15 of the Political Constitution of Colombia and Article 1.62, 1.63 and 1.64 of Decree 4886, 2011).

60.      This stage ends with the decision of the Deputy Superintendent to close the case or to open a formal investigation because there is sufficient information and evidences in the file to continue with the investigation. Accordingly, a plaintiff has special interest in submitting all available evidence to SIC jointly with its initial compliant.

61.      Furthermore, in accordance with Article 20 of Colombian Law 256, 1996,[4] the Sellers intend to file judicial actions against CFR and Abbott since their behavior would have created unfair competition in Colombian's pharmaceutical relevant market. Particularly, under Colombian law, CFR's actions and behavior would allegedly constitute acts of disruption, confusion, deception, and/or discredit of the relevant market, disclosure of trade and industrial secrets, inducement to contractual breach, and/or infringement of applicable law. This action may be filed before the SIC or the Colombian civil courts.

62.      In addition, the Sellers are analyzing the commencement of proceedings seeking the compensation of the damages caused by CFR's breach of its duty of good faith when negotiating the Stock Purchase Agreement, as described above, as well as the loss of opportunity of selling their stock in Lafrancol at its true and real market price.

---

[4] Article 20 of Law 256, 1996 of Colombia states in relevant part: The following actions are available against unlawful competition acts:

   1.   Declaratory and compensatory action. The affected party by unlawful competition acts shall have action to seek the judicial declaration of the illegality of the acts and thus an order against the accused party to correct the effects caused by such conduct and to compensate the complainant for the caused damages. The complainant may request at any time during the proceeding, the adoption of the conservatory measures provided in article 33 of this Act.

63.     The Sellers are also evaluating the commencement of actions before the Colombian civil courts in order to claim the compensation of the damages caused by the contacts that would have taken place between CFR and, subsequently, Abbott, and the Buring Siblings in connection with the claims that have been unduly leveraged as justification for the retention of the Security Deposit and, ultimately, the reduction in the Stock Purchase Agreement's price.

64.     The procedure for seeking damages arising out of unfair competition actions and non-contractual liability is regulated by Law 1564 of 2012, the Code of General Procedure. This judicial proceeding would be commenced by the filing of a lawsuit, including all factual and legal evidence available to the plaintiff. After the defendant's service of the process, the defendant is given an opportunity to file its statement of defense, including factual and legal evidence, and both procedural and merit arguments. Once the procedural defenses are resolved, a conciliation phase must be exhausted before the court and, subsequently, the evidence gathering stage will take place. In this stage, the court has legal powers to request for information (all kind of documents including digital documents), inspections, take depositions and order, practice and collect all the evidence required to substantiate the case. After the completion of this evidentiary stage, the parties will be given an opportunity to present their closing arguments and, subsequently, the judge will issue a first instance ruling. This ruling will be subject to appeal before a higher hierarchy court and will also be subject to cassation, as an extraordinary appeal before the Colombian Supreme Court of Justice.

65.     The Sellers have retained reputable Colombian counsel to represent them in the aforementioned actions. The Sellers hope to prosecute the arbitration filed by Atavida on January 28, 2020 pursuant to the Stock Purchase Agreement and to finalize and file the request for

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

arbitration pursuant to the Escrow Agreement, in case it is required by the Escrow Agent's actions vis-à-vis the orders issued in the arbitration already commenced. Applicants estimate that the second arbitration in Zurich will be initiated within six months following the issuance of the arbitral award in the arbitration in course.

66.     The Sellers have also retained counsel for analyzing the filing of the claim for the compensation of the damages arising out of CFR's breach of its duties during the negotiation of the Stock Purchase Agreement with the Sellers, the antitrust complaint and the extracontractual liability damages compensation claim, to be filed before the Colombian authorities and courts, using the information secured through this Application.

## E.  THE REQUESTED INFORMATION

67.     Abbott maintains its regional headquarters in Miami, Florida. Abbott's Miami headquarters manages Abbott's "business and corporate functions such as finance, business strategy, human resources and public affairs in Latin American and the Caribbean, and support Abbott activities throughout the region." *See* Abbott's Latin American profile published in Miami Herald on March 19, 2014, here attached as Exhibit "10".

68.     Upon information and belief, in 2015, Abbott merged the operations of its subsidiary Abbott Laboratories de Colombia S.A. Colombia, S.A. with Lafrancol.

69.     Accordingly, Abbott's Latin American operation, including those of its subsidiaries CFR (which now would appear to be Abbott Chile) and Abbott Colombia are supervised and oversaw from Abbott's regional headquarters in Miami, Florida.

70.     Upon information and belief, Abbott's regional headquarters in Miami have been directing Abbott Chile and Abbott Colombia's actions to negate the Sellers access to the Security

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

Deposit. In furtherance to this scheme, Abbott has been used the same Colombian counsel than CFR towards achieving its goal.

71.    In fact, the Stock Purchase Agreement between the Sellers and CFR was ultimately signed in CFR's manager's offices in Miami, Florida.

72.    Hence, the information requested in this Application is likely located in Abbott's Latin America headquarters in Miami, Florida.

73.    Applicants require information from Abbott as to Abbott's dealings with CFR with respect to CFR's acquisition of Lafrancol and Abbott's subsequent indirect acquisition of Lafrancol from CFR. Applicants and the other Sellers need to use this information in the prosecution of their claims against CFR in the arbitration proceedings Atavida has brought and will bring against CFR, its successors and the escrow agent to secure the release of the Security Deposit plus interests and damages. Applicants further require discovery from Abbott for purposes of prosecuting, before the Colombian authorities and courts, CFR's failure to disclose its parallel negotiations with Abbott at the time it was negotiating the acquisition of Lafrancol and to seek a declaration of the anticompetitive effects of these actions within the Colombian market and the damages arising thereof. Finally, Applicants intend to seek damages within the arbitration proceedings as well as from the Colombian civil courts with respect to CFR and Abbott's contacts with the Buring Siblings in connection with the criminal investigation filed in Colombia by the Buring Siblings against some of the Sellers, which has been unduly portrayed as the justification for freezing the Security Deposit indefinitely.

74.    The arbitration proceedings under the Stock Purchase Agreement and Escrow Agreement, and the actions before Colombian authorities are pending or are imminent, because

without a decision on those matters the Sellers cannot access the Security Deposit and cannot be compensated for the damages that CFR and Abbott have caused them.

75. Absent discovery from Abbott, the Sellers shall likely be unable to discover fully the real reasons and motives for CFR and Abbott to impede the release of the Security Deposit and to seek the compensation of the damages that such decisions have caused them, (2) the existence and extent of CFR's contacts with Abbott during the negotiation of the Stock Purchase Agreement, (3) the real market value of the Lafrancol stock at the time of the negotiation of the Stock Purchase Agreement, and (4) the extent of the communications between CFR, Abbott and the Buring Siblings in connection with the notice of claim against the Sellers related to a criminal investigation that the Buring Siblings triggered against some of the Sellers in Colombia.

76. Hence, Applicant seeks this Court's assistance in obtaining the following discovery from Abbott:

a. All documents related to the negotiation, due diligence, conditions and analysis carried out regarding Abbott purchase of CFR's shares including, but not limited to, the following:

i. Drafts and final versions of any shares or assets purchase agreement or any document serving or acting as such.
ii. Drafts and final versions of any asset purchase agreement or any document serving or acting as such.
iii. Drafts and final versions of any underwriter agreement or any document serving or acting as such.
iv. Drafts and final versions of any framework investment agreements or any document serving or acting as such.
v. Drafts and final versions of any shareholders agreements or any document serving or acting as such.
vi. Drafts and final versions of any escrow agreement or any document serving or acting as such.
vii. Drafts and final versions of any temporary services agreement or any document serving or acting as such.
viii. Drafts and final versions of any guarantees by the corresponding parent companies or any document serving or acting as such.

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

    ix.  Drafts and final versions of any letter(s) of intent or any document(s) serving or acting as such.

    x.  Drafts and final versions of any closing memorandum(s) of understanding or any document(s) serving or acting as such.

    xi.  Drafts and final versions of any all memorandum(s) related to CFR's Colombian assets or operations or any document(s) serving or acting as such.

    xii.  Drafts and final versions of any non-disclosure agreement(s) or any document(s) serving or acting as such.

    xiii.  All documents, including those evidencing any communication or correspondence to or from CFR and Abbott, with respect to the sale of CFR's shares or assets to Abbott in any manner related to Lafrancol or CFR's Colombian business or the Colombian pharmaceutical market.

    xiv.  All documents, including those evidencing any communication pertaining to the closing of the transaction regarding the sale of CFR's shares or assets to Abbott in any manner related to Lafrancol or CFR's Colombian business.

    xv.  All documents that account for any post-closing matters related to the transaction regarding CFR's shares sale to Abbott in any manner related to Lafrancol or CFR's Colombian business.

b.     All documents evidencing any communication to or from CFR and Abbott with respect to any of the Sellers and Lafrancol, Laboratorio Franco Colombiano Lafrancol S.A., Lafrancol Internacional S.A.S., American Generics S.A.S., Gamar S.A.S., Naturmedik S.A.S., Uquifa S.A.S., Focus S.A.S., Pauly Pharmaceutical S.A.S., Lafrancol Perú, Lafrancol Guatemala, Lafrancol Ecuador, Lafrancol República Dominicana, and Doral Investments International Inc. or simply "Lafrancol."

c.     All documents evidencing communications discussing or analyzing the relationship between CFR's purchase of Lafrancol and Abbott's products or drugs.

d.     All documents evidencing any communication from or to CFR and Abbott, or between any of them and any third party, with respect to any of the notices of claim described in paragraph 30 of this Application.

e.     All documents evidencing any communication between CFR and Abbott, their principals, officers, agents, legal advisors, counsels or current or former employers,

or between them, any of them and any third party, with respect to the Ventura Buring Dispute and/or the arbitration proceeding described in paragraph 31 of this Application, the criminal investigation against Esther Ventura or any matter related to the Ventura Buring Dispute, including, but not limited to legal opinions.

f.      All documents evidencing any communication between CFR and Abbott, or between any of them and any third party, with respect to the criminal investigation of Esther Ventura by the Colombian authorities.

g.      All documents pertaining to the dissolution or winding down of CFR and Lafrancol or indicating the names and information of any Abbott-related entity succeeding CFR or Lafrancol.

h.      All documents evidencing any valuation or analysis of the stock of any, more than one or all of the following companies: Laboratorio Franco Colombiano Lafrancol S.A., Lafrancol Internacional S.A.S., American Generics S.A.S., Gamar S.A.S., Naturmedik S.A.S., Uquifa S.A.S., Focus S.A.S., Pauly Pharmaceutical S.A.S., Lafrancol Perú, Lafrancol Guatemala, Lafrancol Ecuador, Lafrancol República Dominicana, and Doral Investments International Inc. or simply "Lafrancol."

i.      All documents evidencing any valuation, review, or analysis of the Colombian Pharmaceutical Market created, prepared, received or ordered to a third party by CFR or Abbott between 2008 and this date.

j.      All documents evidencing any valuation or assessment of Lafrancol's business or shares created, prepared, received or ordered to a third party by CFR or Abbott between 2008 and this date.

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

k.      All documents evidencing any communication between CFR and Abbott with respect to the Security Deposit.

l.      All documents evidencing any communication between CFR or Abbott and the Escrow Agent with respect to the Security Deposit.

m.      All documents evidencing any communication to or from CFR, Abbott and third parties with respect to the Security Deposit.

n.      All documents evidencing or related to the Security Deposit.

o.      All documents evidencing any communication, review, analysis, guideline, assessment or instruction of any third party claim or party claim with respect to the notices of claim that CFR submitted pursuant to the Stock Purchase Agreement prepared, drafted, received or exchanged by CFR or Abbott since December 2012 to this date.

p.      All documents related to any third-party claim or party claim prepared drafted, received or exchanged by CFR or Abbott since December 2012 to this date.

q.      All documents evidencing communications between Abbott and the following CFR principals, officers, advisors or agents, pertaining to Lafrancol:

>              (i)      Alejandro Weinstein Manieu
>              (ii)     Alejandro Weinstein
>              (iii)    Nicolas Weinstein
>              (iv)     Daniel Salvadori
>              (v)      Agustin Eguiguren
>              (vi)     Jaime Herrera
>              (vii)    Oscar Tutasaura
>              (viii)   Alberto Eguiguren
>              (ix)     Alejandro Rubinstein
>              (x)      Alex Camhi
>              (xi)     José Guillermo Frugone

r.      All documents evidencing communications between Abbott and/or CFR principals, officers, agents, or current or former employers, pertaining to any of the Sellers,

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

Lafrancol, the Security Deposit, the third party and indemnified party claims filed by CFR, including but not limited to the claims related to the Ventura Buring Dispute.

       s.      All documents evidencing communications between Abbott and/or CFR principals, officers, agents, or current or former employers and the following individuals:

           (i)     Viviane Ventura Buring
           (ii)    Michael Ventura Buring

77.     All of the previously mentioned documents must include all hard copy documents, all documents saved by means of magnetic or digital means, or similar service, and all documents available upon consult or download (e.g. any cloud-based or stored documents).

78.     Similarly, Applicants respectfully request for this Court to require Abbott to produce for videotaped deposition, a corporate representative designated as most knowledgeable for purposes of testifying as to the Abbott's indirect acquisition of Lafrancol from CFR and CFR's notices of claim submitted against the Sellers with respect to the Stock Purchase Agreement and the Security Deposit.

79.     Finally, Applicants respectfully request for this Court to require Mrs. Viviane Ventura Buring to appear for a videotaped deposition for purposes of testifying as to her contacts and interactions with CFR and Abbott (or the latter attorneys-in-fact or lawyers) with respect to the criminal actions that she has prosecuted against Mrs. Esther Ventura in Colombia that served as basis for CFR and Abbott to maintain claims against the Sellers pursuant to the Stock Purchase Agreement.

80.     The facts that Applicants secure from Abbott shall be used in the two arbitrations and in the Colombian procedures to support the Sellers' claims against CFR and Abbott.

## III.    **CONCLUSION**

**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343

For the foregoing reasons, Juan María Rendón and Roberto Maurice Ventura Crispino apply for issuance of an Order (A) requiring Abbott Laboratories, Inc. to (1) produce documents regarding CFR and Abbott's claims submitted against the Sellers with respect to the Security Deposit established pursuant to the Stock Purchase Agreement and the Escrow Agreement, (2) produce documents regarding Abbott's indirect acquisition of Lafrancol and the conditions thereto, and  (3) make available for videotaped deposition a corporate representative designated as most knowledgeable for purposes of testifying as to the Abbott's indirect acquisition of Lafrancol from CFR and CFR and Abbott's claims submitted against the Sellers with respect to the Security Deposit; and (B) authorizing Applicants to take the videotaped deposition of Mrs. Viviane Ventura.Buring (A proposed order is here attached as Exhibit "11".)

DATED:  March 16, 2020

Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105
Miami, FL 33131
Email: dev@assoulineberlowe.com
Telephone: 305-567-5576
Facsimile: 305-567-9343

By: */s/ Daniel Vielleville*
    Daniel E. Vielleville, Esq. FBN: 940496
    dev@assoulineberlowe.com

## VERIFICATION

I, Juan María Rendón, pursuant to 28 U.S.C. § 1746, make this declaration:

1.  My name is Juan María Rendón. I am over the age of eighteen (18) and am otherwise sui juris. I have personal knowledge of the facts set forth in this verification.

2.  I am one of the Sellers to the Stock Purchase Agreement entered into with CFR. I am also aware of the disputes that arose between the Sellers and CFR after the completion of the Lafrancol transaction.

3.  I have read the above Application and can attest that all the facts set forth in the Application are true and correct to the best of my knowledge.

4.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _March 13_, 2020.

JUAN MARÍA RENDON

**VERIFICATION**

I, Roberto Maurice Ventura Crispino, pursuant to 28 U.S.C. § 1746, make this declaration:

1.     My name is Roberto Maurice Ventura Crispino. I am over the age of eighteen (18) and am otherwise sui juris. I have personal knowledge of the facts set forth in this verification.

2.     I am one of the Sellers to the Stock Purchase Agreement entered into with CFR. I am also aware of the disputes that arose between the Sellers and CFR after the completion of the Lafrancol transaction.

3.     I have read the above Application and can attest that all the facts set forth in the Application are true and correct to the best of my knowledge.

4.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _March 13_, 2020.

_____
ROBERTO MAURICE VENTURA CRISPINO

1

ASSOULINE & BERLOWE, P.A.
100 S.E. 2nd St., Suite 3105, Miami, Florida 33133 • Telephone: (305) 567-5576 • Facsimile: (305) 567-9343