**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:20-mc-21152-KMM

In re Application of:

JUAN MARIA RENDON AND
ROBERTO MAURICE VENTURA CRISPINO,

     Applicants.

_____/

## REPORT AND RECOMMENDATION ON APPLICATION
## FOR ASSISTANCE TO INTERNATIONAL AND COLOMBIAN TRIBUNALS

    **THIS CAUSE** is before the Court on Applicants, Juan Maria Rendon ("Rendon") and Roberto Maurice Ventura Crispino's ("Ventura," collectively "Applicants"), Application for Assistance to International and Colombian Tribunals pursuant to 28 U.S.C. § 1782 (the "Application"). ECF No. [1]. Applicants seek discovery to be used in support of: (1) a pending International Chamber of Commerce ("ICC") arbitration filed against Abbott Laboratories (Chile) Holdco SpA ("Abbott Chile"), Abbott Laboratories S.A. (Spain), Abbott Laboratories S.A. (Switzerland), and Abbott Laboratories (U.S.) (collectively, "Abbott" or the "Respondents"); (2) a potential ICC arbitration; (3) a complaint to be filed before a Colombian regulator, the Superintendence of Industry and Commerce ("SIC"); and (4) a complaint to be filed in a civil court in Colombia. *Id.* at 1. Specifically, Applicants seek leave of Court to obtain discovery from Respondents, whose regional headquarters are in the Southern District of Florida. *Id.* ¶¶ 2, 14. Respondents filed their Opposition to the Application and a Cross-Motion to Dismiss the Application ("Opposition and Cross-Motion"). ECF No. [9]. Applicants filed a Reply to Respondents' Opposition and Cross-Motion. ECF No. [16]. Finally, Respondents filed their Reply, ECF No. [23], followed by two Notices of Supplemental Authority, ECF Nos. [25], [28].

Oral argument on the Application was held before the undersigned on September 21, 2020.  ECF No. [27].  After due consideration of the Application, the pertinent portions of the record, and being fully advised in the premises, the undersigned **RECOMMENDS** that the Application, ECF No. [1], be **DENIED,** and that the Cross-Motion to Dismiss, ECF No. [9], be **GRANTED.**

## I.    BACKGROUND

On or around August 10, 2012, Applicants, along with Esther Ventura de Rendon, Bella Ventura de Mitrotti, Joyce Ventura de Duran, and a Swiss limited liability company, Atavida Holdings GmbH (collectively, the "Sellers") entered into a stock purchase agreement (the "Stock Purchase Agreement") with a Chilean pharmaceutical company, CFR International SpA ("CFR") to sell their ownership interest in Lafrancol, one of the largest pharmaceutical groups in Colombia. ECF No. [1] ¶¶ 17–19.  Pursuant to the Stock Purchase Agreement, CFR acquired a one hundred percent interest in Lafrancol.  *Id.* ¶ 19.  With the acquisition of Lafrancol, CFR was able to gain a dominant position in several pharmaceutical categories in Colombia.  *Id.* ¶ 21.  The purchase price for Lafrancol was $562 million.  *Id.* ¶ 22.

Along with the Stock Purchase Agreement, the parties also entered into an Escrow Agreement that governed the release of the $25 million security deposit ("security deposit").  *Id.* The Escrow Agreement provided a two-year schedule for the release of the security deposit to the Sellers, subject to third-party or indemnified-party claims.  *Id.* ¶¶ 22, 25.  Starting in July 2013, CFR submitted sixteen third-party and indemnified-party claims and the escrow agent froze any payments of the security deposit to Sellers.  *Id.* ¶ 27.  One of the claims CFR submitted involved allegations that the Sellers failed to disclose the existence of a prior settlement agreement with minority shareholders of Lafrancol, Michael and Viviane Ventura Buring (the "Buring Siblings"). *Id.* ¶ 30.  To date, no payments from the security deposit have been made to the Sellers.  *Id.* ¶ 29.

Applicants allege that following the closing of the Stock Purchase Agreement between Lafrancol and CFR, "CFR had formally initiated conversations with Abbott to res[ell] the Lafrancol stock" to Abbott. *Id.* ¶ 44. On or around May of 2014, almost two years after Applicants sold their interest in Lafrancol to CFR, CFR completed its sale of Lafrancol to Abbott for a price of approximately one billion dollars. *Id.* ¶ 45. Applicants allege that CFR's "lack of candor impeded Sellers from properly valuing their stock" in their negotiation of the Stock Purchase Agreement with CFR. *Id.* ¶ 46.

### A.  Discovery Sought

Applicants seek discovery from Respondents, on their own behalf and as the successors of CFR, concerning Respondents' dealings with CFR regarding the acquisition of Lafrancol from the Sellers. *Id.* ¶¶ 53, 73. Specifically, Applicants seek all documents responsive to nineteen document requests. *Id.* ¶ 76. The first document request for "[a]ll documents related to the negotiation, due diligence, conditions and analysis carried out regarding Abbott['s] purchase of CFR's shares" contains fifteen subcategories requesting drafts and final versions of all of the agreements associated with the transaction between CFR and Abbott. *Id.* Another request seeks production of documents between CFR and Abbott "with respect to [a] criminal investigation of Esther Ventura by the Colombian authorities." *Id.* The remaining eighteen document requests seek documents evidencing communications between CFR and Abbot, including communications between principals, officers, agents, or current or former employees, concerning: (1) CFR's purchase of Lafrancol; (2) Abbott's purchase of CFR's Lafrancol shares; (3) communications regarding the security deposit established pursuant to the Stock Purchase and Escrow Agreement; and (4) communications among Abbott, CFR, and the Buring Siblings. *Id.*

Applicants also seek two depositions. *Id.* ¶¶ 78–79.  Specifically, Applicants request that a corporate representative of Abbott testify as to Respondents' acquisition of Lafrancol and CFR's notices of claim submitted against the Seller that are preventing the disbursement of the security deposit. *Id.* ¶ 78.  Second, they request that Lafrancol's minority shareholder, Ms. Viviane Ventura Buring, appear for a deposition regarding her contacts and interactions with CFR and Abbott as they relate to actions in Colombia which are the basis of certain claims that are preventing disbursement of the security deposit to the Applicants. *Id.* ¶ 79.

In support of their Application, Applicants submitted the Declaration of their counsel, Mr. Luis Alfredo Barragan ("Mr. Barragan's Declaration"), who is representing the Sellers in all pending and potential matters before the ICC and within Colombia.  ECF No. [16-1] ¶¶ 7–10. Therein, Mr. Barragan stated that judicial assistance would be "highly material and relevant" and would "assist Sellers' case in all the foreign proceedings." *Id.* ¶ 36.  Mr. Barragan states that discovery pursuant to § 1782 would provide information about:

> (i) CFR's and Abbott's contacts regarding Lafrancol and/or the Colombian market and CFR's intentions when purchasing Lafrancol; (ii) the existence and extent of CFR's breach of its duties during the negotiation of the [Stock Purchase Agreement]; and (iii) the contacts that would have taken place between CFR–and later Abbott–, and [the Buring siblings], in connection with the claims that have been used by CFR and Abbott to maintain the retention of the Security Deposit.

*Id*.  Although Mr. Barragan's Declaration summarizes the discovery that Applicants seek and the receptivity of the different arbitral and government entities at issue, the Declaration does not, among other things: (1) state that the information is required for the filing of any of the contemplated actions, (2) provide any specificity as to the basis for the presumed causes of action, or (3) state when they expect to file such petitions.  Indeed, no drat of the contemplated actions has been provided to date.

4

**B.  Pending And Contemplated Actions Between Applicants And Abbott**

Applicants state that they intend to use this information in a pending ICC arbitration, as well as three other proceedings which have yet to be filed.  ECF No. [1] ¶ 73.  Specifically, as to those unfiled proceedings, Applicants contend that they intend to file another arbitration for the release of the security deposit, as well as file proceedings before the SIC and the civil courts in Colombia.  *Id.*  A summary of each of the proceedings is as follows:

**1.  The Pending ICC Arbitration**

On January 28, 2020, one of the Lafrancol sellers, Atavida Holdings GmbH, commenced an ICC arbitration against Respondents for the release of the $25 million security deposit.[1]  *Id.* ¶¶ 53–54; ECF Nos. [9-1] ¶ 4; [16-1] ¶ 8.  Respondent Abbott Chile also filed a Request for Joinder and added all the Sellers, including the Applicants, as parties to the arbitration so that all parties would be bound by the arbitral tribunal's award and provide evidence through discovery and the hearings about the disputed losses.  ECF Nos. [9-1] ¶ 9; [16-1] ¶¶ 22–23.  Atavida, as the original claimant in the arbitral proceeding, proposed Bogotá, Colombia as the seat of the arbitration.  ECF No. [1] ¶ 54.  Respondents argued that pursuant to the Stock Purchase Agreement's arbitration clause, they may select New York City, New York as the seat of the arbitration.  ECF No. [9] at 14.  At the hearing on September 21, 2020, the Applicants confirmed that the ICC panel has yet to determine the seat of the proceedings or appoint a chair to the arbitration panel.  ECF No. [27].  Applicants also argue that discovery should be provided for use in the ICC arbitration because the arbitral panel would qualify as a "foreign or international tribunal" under the statute and that discovery under § 1782 is appropriate in the Court's discretion.  ECF No. [1-1] 19–33.

---

[1] The Respondents filed jurisdictional objections arguing that Abbott Chile should be the only Respondent as Abbott Chile is CFR's only successor in title.  ECF Nos. [1] ¶ 53; [9] at 10–11; [16-1] ¶ 30.  A decision on this issue from the arbitral panel is still pending.

### 2.  The Contemplated ICC Arbitration

Applicants allege that they intend to initiate a second arbitration against the escrow agent, Credit Swiss, if there is non-compliance with orders issued in the pending ICC arbitration.  ECF No. [1] ¶ 8.  Applicants estimate this contemplated arbitration would be initiated approximately six months following the issuance of an award in the pending ICC arbitration.  *Id.* ¶ 65.

### 3.  The Contemplated SIC Proceeding

Applicants state that they, along with the other Sellers, intend to file a complaint before the SIC, Colombia's "competition regulator," "in order to seek the declaration of the anticompetitive effects of CFR's actions in the Colombian market, and the corresponding compensation and sanctions."  *Id.* ¶ 58; ECF No. [9] at 12.  The SIC is "an entity of the national government [and] part of the executive branch of power."  ECF No. [16-1] ¶ 37.  It has "full judicial faculties" and "fully acts as a civil court" in matters of consumer protection, intellectual property rights and competition protection.  *Id.* ¶¶ 40–43.  In the SIC, parties are "ordered to file [evidence gathered by means of outside proceedings] along with their claim by Colombian law [article 84.3 of Law 1564 of 2012]."  *Id.* ¶ 49.  In presenting a case to the SIC, Applicants contend that discovery obtained through the Application would be important because "the SIC, in its administrative duties regarding competition, will analyze all evidence . . . in order to decide it if opens a formal investigation or not."  *Id.* ¶ 48.  Further, the SIC has both administrative faculties and judicial powers to resolve consumer protection, intellectual property rights, and competition protection matters.  *Id.* ¶¶ 41–42.

### 4.  The Contemplated Colombian Civil Action

Likewise, the Applicants and other Sellers intend to file judicial actions in civil court in Colombia alleging that CFR's actions "created unfair competition in Colombia['s] pharmaceutical

relevant market." ECF No. [1] ¶ 61. The Applicants state that they are "analyzing the commencement of proceedings" for compensatory damages for CFR's breach of its duty of good faith in negotiating the Stock Purchase Agreement, for the loss of opportunity to sell Lafrancol stock at its true market price, and for the retention of the security deposit due to "unduly leveraged" claims. *Id.* ¶¶ 62–63. Applicants claim that "former CFR officers, Abbott and [the Buring siblings], are liable under article 2341 of the Colombian Civil Code." ECF No. [16-1] ¶ 35. The competent court and place of commencement of this action will be determined "based on the evidentiary materials gathered in the Section 1782 Application." *Id.*

## II.   LEGAL STANDARD

### A. Section 1782's Statutory Factors

Title 28 U.S.C. § 1782 seeks "to provide federal-court assistance in gathering evidence [and other tangible evidence] for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); 28 U.S.C. § 1782 (2019). District courts have the authority to grant an application for judicial assistance in foreign proceedings when the statutory requirements of 28 U.S.C. § 1782(a) are satisfied. The Eleventh Circuit has defined those statutory requirements as follows:

> (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of a 'document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1198–99 (11th Cir. 2016) (quoting *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007)).

### B.  The Discretionary *Intel* Factors

Once the § 1782 statutory factors are met, a district court must evaluate four discretionary factors established by the Supreme Court in *Intel*.  The Eleventh Circuit adopted the *Intel* factors and outlined them as follows:

> (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'

*In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264−65).  While the factors are routinely discussed individually, they should not be considered independent of each other; rather, they should be considered collectively by the court when deciding whether to excise its discretion in granting a § 1782 application.  *In re Application of Action & Proc. Found. Daniel Bodnar*, No. C-14-80076-MISC-EMC-LB, 2014 WL 2795832, at *5 (N.D. Cal. June 19, 2014).

Although *Intel* did not establish the appropriate burdens of proof for the discretionary factors, "it did say in a footnote that the party 'targeted' in a § 1782 application 'would no doubt wield the laboring oars in opposing discovery.'"  *Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1222 (11th Cir. 2019) (citing *Intel*, 542 U.S. at 265 n.17).  In *Dep't of Caldas*, the Eleventh Circuit evaluated the second discretionary factor, regarding a foreign tribunal's receptivity to the § 1782 information.  *Id.* at 1222–23.  The Court held that it is "not necessary (or helpful) to put the burden on one side or the other."  *Id.* at 1223.  Instead, the discretionary factors are more akin to "guideposts."  *Id.*

The first *Intel* factor examines "whether 'the person from whom discovery is sought is a participant in a foreign proceeding.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264). "[T]he Supreme Court explained that Section 1782 discovery is more likely to be justified when the person from whom the discovery is sought is not a participant in the prospective foreign proceeding." *In re Jagodzinski*, No. 18-20606-MC, 2019 WL 1112389, at *5 (S.D. Fla. Jan. 15, 2019) (citing *Intel*, 542 U.S. at 264), *report and recommendation adopted*, No. 18-20606-MC-WILLIAMS/TORRES, 2019 WL 2255564 (S.D. Fla. Apr. 8, 2019). Indeed, according to the Supreme Court, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's reach . . . [and] evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

The second *Intel* factor examines whether the foreign tribunal is willing to consider the information sought. *In re Jagodzinski*, 2019 WL 1112389, at *6. In examining the second *Intel* factor, the court looks at whether authoritative proof exists that a foreign court would reject evidence obtained with the aid of § 1782. *In re MTS Bank*, No. 17-21545-MC, 2017 WL 3155362, at *6 (S.D. Fla. July 25, 2017). Moreover, there is a difference between a foreign court's receptivity or nonreceptivity to the information requested and the "foreign discovery requirement." *H.M.B. Ltd.*, No. 17-21459-CIV, 2018 WL 4778459, at *5, *9. Ultimately, the party requesting discovery does not have to meet a threshold requirement that evidence sought would be discoverable under the law governing the foreign proceeding. *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 n.3 (S.D. Fla. 2012).

The third *Intel* factor examines whether the Applicant's § 1782(a) request "attempt[s] to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. While the court does not require an applicant to conclusively

establish that they have exhausted all discovery attempts abroad, "a perception that an applicant has 'side-stepped' less-than favorable discovery rules by resorting immediately to § 1782 can be a factor in [the] court's analysis." *In re: Application of Joint Stock Co. Raiffeisenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) (internal quotations omitted). Nevertheless, the Eleventh Circuit has held that, "even when requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery." *In re Application of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016).

The fourth and final *Intel* factor considers whether the Application contains "unduly intrusive or burdensome requests." *Intel*, 542 U.S. at 265. Requests must be narrowly tailored, so that the items sought are limited to issues relevant in the foreign proceeding. *See In re Bernal*, No. 18-21951-MC-WILLIAMS/TORRES, 2018 WL 6620085, at *26–27 (S.D. Fla. Dec. 18, 2018) (holding that subpoenas with the words "relating to" or "regarding" with no specificity of the nature to the communication sought, can render a discovery request facially overbroad and burdensome). "[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. A district court may also consider if an "unduly intrusive or burdensome request" is "made in bad faith, for the purpose of harassment," or is part of a "fishing expedition." *In re Kivisto*, 521 F. App'x 886, 888 (11th Cir. 2013) (internal quotations omitted).

## III.   ANALYSIS

As a preliminary matter, Respondents argue that the Application is premature because the seat of the arbitration and the chair of the panel have yet to be determined. ECF No. [9] at 13–15. Specifically, Respondents argue that if the arbitration takes place in the United States, there would be no basis to find that the arbitration is a foreign tribunal as required by the statute. *Id.* At the

September 21, 2020 hearing, Applicants acknowledged that they had no case law supporting the applicability of § 1782 to a domestic arbitration but stated that they would request a carveout due to the number of foreign parties involved.  ECF No. [27].

A plain reading of § 1782 makes it clear that the statute does not apply to domestic arbitrations.  If the arbitration takes place in the United States, the Application cannot be granted, and the fact that there are various foreign parties is not a basis to grant an exception to a statutory requirement.  As such, the undersigned recommends that the Application, to the extent it seeks documents for the pending ICC arbitration, be denied as premature.

In addition, it should also be denied on the merits.  Specifically, if the panel is convened outside of the United States, the Application should be denied because an ICC proceeding is not a foreign or international tribunal, as required by § 1782.  The Application as to the contemplated ICC proceeding should also be denied on this basis.  Further, the contemplated ICC proceeding and the Colombian actions should also be denied on the ground that they are not reasonably contemplated proceedings under the statute.  Finally, even if any of the pending or contemplated actions before the ICC or any of the Colombian actions did meet the statutory requirements of § 1782, the Court finds that the Application should not be granted based upon an analysis of the *Intel* discretionary factors.

### A.  The Application Does Not Meet The Statutory Requirements Of § 1782.

#### 1.  The Pending ICC Arbitration Does Not Satisfy the Statutory Requirements As It Is Not A Foreign Or International Tribunal.

In *Intel*, the Supreme Court broadened the interpretation of § 1782 "to reach not just 'judicial proceedings', but 'proceeding[s] in a foreign or international tribunal' which Congress understood to include 'administrative and quasi-judicial proceedings abroad.'"  *Ex rel Application of Winning (HK) Shipping Co. Ltd.*, No. 09-22659-MC, 2010 WL 1796579, at *14 (S.D. Fla. Apr.

30, 2010) (citing *Intel*, 542 U.S. at 258).  There, the Supreme Court determined that the Directorate General-Competition of the European Commission qualified as a "foreign or international tribunal" under § 1782 to the extent it acted as a "first-instance decisionmaker," with its decisions reviewed by the Court of First Instance and the European Court of Justice, which both "qualif[ied] as tribunals."  *Intel*, 542 U.S. at 252, 254–55, 257–58.  In reaching this conclusion, the Supreme Court analyzed whether a body acts as a first-instance adjudicative decision maker, permits the gathering and submission of evidence, has the authority to determine liability and impose penalties, and issues decisions subject to judicial review.  *Intel*, 542 U.S. at 255 n.9, 257–58.  Although the *Intel* Court did not detail the level of judicial review, this analysis of the functions of the proceedings, referred to as the "functional analysis" test, has been used since *Intel* to determine whether a proceeding involves a foreign or international tribunal as required by the statute. *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc*., 685 F.3d 987, 993–98 (11th Cir. 2012), *vacated and superseded by*, 747 F.3d 1262, 1270 n.4 (11th Cir. 2014) (stating that *Intel* "applied a functional analysis"); *Ex rel Application of Winning*, 2010 WL 1796579, at *8 (applying the functional analysis test).

Applicants argue that an ICC arbitration satisfies the functional analysis test set forth in *Intel*, and therefore, is a foreign or international tribunal.  ECF Nos. [1-1] at 24–26; [16] at 10–15. Applicants contend that ICC tribunals act as first-instance decision-makers that resolve factual and legal issue disputes, are impartial and independent of the parties, conduct hearings and hear witnesses, provide interim relief, issue procedural orders, render rulings on jurisdiction and the merits that bind the parties, and its awards are reviewable by courts where the seat of arbitration is held.  ECF Nos. [1-1] at 26; [16] at 14.  Applicants assume that the seat of the arbitration will be in Colombia and cite to Mr. Barragan's Declaration which explains that an ICC arbitral award

in Colombia is subject to judicial review by Colombian national courts for "jurisdictional and procedural irregularities" which include:

> (i) [t]he incapacity of a party when the arbitration agreement was executed, (ii) the validity of the arbitration agreement under the applicable law, (iii) whether proper notice of the proceedings or of the arbitrator[']s appointment was provided to the parties, (iv) whether both parties were able to present their case, (v) whether the dispute was properly within the scope of the arbitration agreement, (vi) whether the constitution of the arbitral tribunal and the procedure was in accordance with the parties' agreement, (vii) whether the subject matter of the dispute was arbitrable under Colombian law, and (viii) whether the award conflicts with Colombian public policy.

ECF No. [16-1] ¶ 31.  Applicants also urge the Court to rely on opinions from the Fourth and Sixth Circuit Court of Appeals holding that private arbitral panels qualify as "foreign or international tribunals."  ECF Nos. [1-1] at 25–26; [16] at 15, 18–19; *see Servotronics, Inc. v. The Boeing Co.*, 954 F.3d 209, 214 (4th Cir. 2020) (a private arbitration under the Chartered Institute of Arbitrators qualified as a "foreign or international tribunal" because it derived from "government-conferred authority" under English law); *In re Application to Obtain Discovery for Use in Foreign Proceedings*, 939 F.3d 710, 723 (6th Cir. 2019) (the text, context and structure of § 1782 provides no reason to doubt that private arbitral panels that are established by contract and issue binding decisions on the parties qualify as "foreign or international tribunals").

In its Opposition and Cross-Motion, Respondents contend that an ICC arbitration is not a foreign or international tribunal as required by the statute.  Respondents draw a distinction between state-sponsored arbitrations and private arbitrations, such as an ICC arbitration, and argue that courts have limited § 1782 to state-sponsored arbitrations.  ECF No. [9] at 16–21.  Further, Respondents contend that even if some types of private arbitrations constitute foreign or international tribunals under § 1782, an ICC arbitration does not, as it fails to meet the functional analysis test of *Intel* "because ICC decisions are not subject to any meaningful judicial review…." *Id.* at 21.

Following *Intel*, Circuit Courts have been split as to whether private arbitrations meet the § 1782 definition of a "foreign or international tribunal."  *See El Paso Corp. v. La Comision Ejecutiva Hidroelecctrica del Rio Lempa*, 341 F.App'x 31, 34 (5th Cir. 2009) (finding private arbitration was not a tribunal within the meaning of the statute); *In re Application to Obtain Discovery*, 939 F.3d at 719–28 (finding private arbitration was a tribunal within meaning of the statute); *Servotronics*, 954 F.3d at 210 ("the arbitral panel in the United Kingdom is indeed a foreign tribunal"); *In Re Guo*, 965 F.3d 96, 104–07 (2d Cir. 2020), *as amended* (July 9, 2020) (finding private arbitration did not fall within meaning of tribunal); *Servotronics Inc. v. Rolls-Royce PLC et al*, 975 F.3d 689, 696 (7th Cir. 2020) (finding private arbitration is not a tribunal for the purposes of the statute).   The Eleventh Circuit considered this question in *Consorcio Ecuatoriano* and initially concluded that, after applying an *Intel* functional analysis, a private arbitration in Ecuador came under the scope of § 1782.  747 F.3d at 1269–71.   In making that determination, the Eleventh Circuit considered that the arbitral panel at issue could receive evidence, resolve the dispute, award a binding decision and that "the award of the arbitral panel is subject to nullification based on procedural defects in the arbitration proceeding and to constitutional attack if the constitutional rights of one of the parties has been violated."  685 F.3d at 995–96 (internal quotations omitted).   They also held that the functional analysis does not require that the "sum and substance of the arbitral body's decision [be] subject to full judicial reconsideration on the merits."  *Id*. at 996–97.  However, the Eleventh Circuit later vacated that opinion on the grounds that the record was not sufficiently developed as to that point, and instead, affirmed the lower court on other grounds.  *Consorcio Ecuatoriano*, 747 F.3d at 1269–71. Notwithstanding the fact that the decision was vacated, the Court noted that the functional analysis

test was the standard to be used in deciding whether a private arbitration fell under the statutory requirements of § 1782. *Id.* at 1270 n.4.

Although both parties dispute the impact of *Consorcio Ecuatoriano*, the issue before the Court is a discrete question: is an ICC arbitration a "foreign or international tribunal" as required under § 1782. As Respondents note, the overwhelming number of courts that have reviewed whether an ICC proceeding is a "foreign or international tribunal" under § 1782 have concluded that ICC proceedings are not covered by the statute on the grounds that there is a lack of judicial review of ICC arbitral panel decisions. *See In re Operadora DB Mexico, S.A. de C.V.*, 609-CV-383-ORL-22GJK, 2009 WL 2423138, at *9–10 (M.D. Fla. Aug. 4, 2009) (denying a § 1782 application because "the process for reviewing the decisions of the ICC Panel is starkly different than the judicial review inherent in the proceedings contemplated by Congress . . . and recognized by the Supreme Court in *Intel*"); *see also In re Application by Rhodianyl S.A.S.*, 2011 U.S. Dist. LEXIS 72918, at *49–50 (D. Kan. Mar. 25, 2011) ("[j]udicial review of the [ICC] arbitration award does not include review of legal or factual conclusions"); *see also In re Matter of the Application of Oxus Gold PLC*, 2006 WL 2927615, at *6 (D.N.J. Oct. 11, 2006) ("international arbitral panels created exclusively by private parties, such as private commercial arbitration administered by the [ICC], a private organization based in Paris, are not included in the statute's meaning") (citations omitted). For example, the district court in *In re Operadora* applied *Intel's* functional analysis test and determined that the ICC arbitration was not a "tribunal" under § 1782 because "[t]he review process for decisions of the ICC Panel does not satisfy the requirements of *Intel*." 2009 WL 2423138, at *6. The court elaborated that:

> although the decisions of the ICC Panel are final and binding on the parties, those decisions are not judicially reviewable. The ICC Rules dictate that the ICC Panel must submit its proposed award to the ICC Court, whose review is limited to "lay[ing] down modifications as to the form of the Award." The ICC Court "may

> also draw [the ICC Panel's] attention to points of substance," but must do so "without affecting the [ICC Panel's] liberty of decision." The ICC Rules do not provide for any review by a state-sponsored tribunal.

*Id.* at *10 (internal citations omitted) (alterations in original) (citing Rules of Arbitration of the ICC, Art. 27 ("Scrutiny of the Award by the Court")).  In *In re Application by Rhodianyl*, the court held that § 1782 did not apply to a purely private arbitration where the procedural rules of the arbitration would be governed by the ICC rules.  2011 U.S. Dist. LEXIS 72918, at *9, 33–40.  The court relied on the fact that in an ICC arbitration the "results of the arbitration [would be subjected] only to the most limited of review" and would not include review of any of the legal or factual conclusions.  *Id.* at 49–50.

Here, the Court finds that the pending ICC arbitration is not a foreign or international tribunal because its decision would not be subject to judicial review.  In this case, Mr. Barragan's Declaration specifically notes that if the ICC arbitration were to take place in Colombia, it would be subject to judicial review on "jurisdictional and procedural irregularities."  ECF No. [16-1] ¶ 31.  Indeed, there is no evidence that a review of the legal conclusions or facts underlying the arbitral panel's decision would be permitted.  At most, Mr. Barragan's Declaration states that the arbitral award would be subject to review to the extent that it conflicts with Colombian public policy.  *Id.*  In short, the panel's decision would only be subject to limited review for jurisdictional and procedural irregularities, and not the type of judicial review as contemplated by *Intel*.

Applicants cite to only one case, *In re Babcock Borsig AG*, 583 F. Supp. 2d 233 (D. Mass. 2008), where a court found that an ICC arbitration is a "tribunal" under § 1782.  In that case, the court concluded that *Intel's* "reasoning and dicta strongly indicate that [ICC arbitrations] also fall within the statute" § 1782 because "[t]he parties agree that the ICC has the authority to hear the dispute …, to weigh evidence, and to issue a decision that is binding on the parties."  *Id.* at 238.

The undersigned declines to adopt its reasoning.  Not only has *In re Babcock* been consistently rejected by other courts, it also failed to consider the judicial review of the ICC arbitral panel's decision—an important consideration under the *Intel* functional analysis test.  *See In re Operadora*, 2009 WL 2423138, at *11 (disagreeing with the reasoning in *Babcock*); *In re Dubey*, 949 F. Supp. 2d at 994–95 (C.D. Cal. 2013) (concluding that the broad interpretation of *Intel*, as laid out in *Babcock* is "unconvincing"); *In re Grupo Unidos Por El Canal S.A.*, 14-MC-00226-MSK-KMT, 2015 WL 1810135, at *8 (D. Colo. Apr. 17, 2015) (same).

Moreover, Applicants' argument urging the Court to rely on the Sixth and Fourth Circuit Court of Appeals cases to show that private arbitrations qualify as foreign or international tribunals is unavailing.  ECF Nos. [1-1] at 25–26; [16] at 15, 18–19.  First, the Sixth Circuit declined to use the functional analysis test.  Specifically, in *In re Application to Obtain Discovery*, the Sixth Circuit relied on the text, context and structure of § 1782, rather than applying the *Intel* functional analysis test, and concluded broadly that private arbitral panels qualified as "foreign or international tribunals."  939 F.3d at 717–31.  There, the court was "not convinced that *Intel* spawned a functional analysis test, or that, if it did, that test include[d] judicial reviewability."  *Id.* at 730 n.11.  Given the Eleventh Circuit's discussion of the functional analysis test in *Consorcio Ecuatoriano*, the undersigned is not persuaded that disregarding the test is appropriate here.

Second, Applicants also rely on the Fourth Circuit's decision in *Servotronics*.  954 F.3d 209 at 214.  That argument, too, is unpersuasive given that although the Fourth Circuit did not explicitly adopt the functional analysis test, it based its decision on the fact that the private arbitration at issue was under the Chartered Institute of Arbitrators and qualified as a "foreign or international tribunal" because "UK arbitrations are sanctioned, regulated, and overseen by the government and its courts."  *Id.*  Because the Fourth Circuit based this decision on a functional

17

consideration, the judicial reviewability of the decision by the English courts, Applicants' reliance on the decision provides little support to its argument. Finally, the cases relied upon by Applicants in the Sixth and Fourth Circuits did not concern ICC arbitrations. Specifically, *In re Application to Obtain Discovery* concerned a Dubai International Financial Centre-London Court of International Arbitration, 939 F.3d at 714, and *Servotronics*, concerned a private arbitration under the Chartered Institute of Arbitrators in United Kingdom, 954 F.3d at 210–11.

Finally, the Court notes that Applicants point to two other cases within the Eleventh Circuit—*Ex rel Application of Winning* and *In re Application of Pola Mar., Ltd.*, 4:16-cv-00333, 2018 WL 1787181, at *2 (S.D. Ga. Apr. 13, 2018)—to support their contention that a private arbitral panel, such as an ICC arbitration, can meet the statutory requirements of § 1782. ECF No. [16] at 13 n.3, 17. However, neither of those cases concern an ICC arbitration; rather both concern arbitrations before the London Maritime Arbitration Association. Applicants fail to consider that in each of those cases the decision as to whether a private arbitral panel met the statutory requirements was based upon whether there was judicial review of the private arbitral body's decision. Specifically, both of those cases concluded that the private arbitral tribunals qualified as foreign tribunals under § 1782 because, upon application of the *Intel* functional analysis test, the decisions of those private arbitral tribunals were reviewable by the English courts. *Ex rel Application of Winning*, 2010 WL 1796579, at *9–10 ("[T]he tribunal at issue is a first-instance decision maker that renders decisions which are reviewable by an English court."); *In re Application of Pola Mar.*, 2018 WL 1787181, at *2 (although an arbitration before the London Maritime Arbitration Association may be similar to a purely private arbitration, "its reviewability by a true judicial body [of the English Courts] bring it within the § 1782 definition of 'foreign tribunal.'") (citing to *Ex rel Application of Winning*, 2010 WL 1796579, at *9–10). Indeed, in *Ex*

18

*rel Application of Winning*, the petitioner explained that the English court, in reviewing a decision by the London Maritime Arbitration Association, "may not only consider whether the panel's jurisdiction was proper, but if there were serious irregularities such as the panel exceeding its power, not dealing with the issues presented, procedural irregularities, the decision being contrary to public policy, or . . . an error concerning a point of law . . . ." *Ex Parte* Verified Pet. for Disc. in Aid of Foreign Proceedings and Mem. of Law in Supp. Thereof, at 16, (No. 1:09-mc-22659), ECF No. 1.  As such, neither *Ex rel Application of Winning*, nor *In re Application Pola Mar.* support a finding that an ICC arbitration is a foreign or international tribunal because judicial review in the instant matter, assuming it is before a Colombian court, is only limited to "jurisdictional and procedural irregularities" and not the substantive review allowed by the London Maritime Arbitration Association.  ECF No. [16-1] ¶ 31.

> **2.    The Contemplated ICC Arbitration And The Colombian Actions Also Fail To Satisfy The Statutory Standards Because They Are Not Within Reasonable Contemplation.**

In evaluating the contemplated ICC proceeding and the Colombian actions, the Court must decide whether they qualify as "proceedings" and, if so, whether the discovery is "for use" in those proceedings.  The Court finds that the contemplated ICC arbitration, as well as the Colombian actions, do not yet qualify as "proceedings" under § 1782 because they are too speculative.

In *Intel*, the Supreme Court held that under § 1782, a proceeding does not need to be pending or imminent, but it must "be within reasonable contemplation" in order for an applicant to seek discovery under the statute.  *Intel*, 542 U.S. at 259.  In determining that a matter is within reasonable contemplation, courts have held that an "applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated."  *Certain Funds, Accounts and /or Investment Vehicles v. KPMG*,

798 F.3d 113, 123 (2d Cir. 2015).  Indeed, this Circuit has held that "'a district court must [also] insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time.'" *Consorcio Ecuatoriano*, 747 F.3d at 1270 (quoting *In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 692 (D.C. Cir. 1989); *see also Furstenberg Finance SAS v. Litai Assets*, 877 F.3d 1031, 1035 (11th Cir. 2017) (reliable indications existed when the applicants stated that they would file their claim within forty-five days and presented the court with evidence to support these claims); *see also In re Pott*, No. 12-24515-CIV, 2013 WL 3189262, at *3 (S.D. Fla. June 20, 2013) (finding that there were no "proceedings" under § 1782 where underlying claims were dismissed and reconsideration was unlikely).  Further, the "future proceedings must be more than speculative." *Consorcio Ecuatoriano*, 747 F.3d at 1270.

The "for use" statutory requirement is satisfied when Applicant can: (1) "inject the requested information into a foreign proceeding" and (2) the discovery is "something that will be employed with some advantage or serve some use in the proceeding." *In re Ferrer*, No. 18-20226-CIV, 2018 WL 3240010, at *5 (S.D. Fla. July 3, 2018), *on reconsideration in part*, No. 18-20226-CIV, 2018 WL 4575043 (S.D. Fla. Sept. 5, 2018), and *appeal dismissed sub nom. Ferrer v. Delcop LLC*, No. 18-13244-JJ, 2018 WL 5881525 (11th Cir. Sept. 19, 2018) (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)).  The statute "[does not] require that every document discovered be actually used in the foreign proceeding." *In re Bernal*, 2018 WL 6620085, at *5 (quoting *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009)).  It is enough that Applicant "intend[] to offer it in good faith and argue for its admission." *Id.*

Although Applicants do not address whether the contemplated ICC proceeding meets the statutory requirements, they argue that the contemplated Colombian actions are within "reasonable

contemplation" and that they have met the "for use" standard based entirely on their sworn Application, ECF No. [1].  ECF No. [16] at 20.  They state that the Application sufficiently explains that they seek damages, including corresponding compensation and sanctions under various Colombian laws for breach of the duty of good faith and unfair competition.  *Id.*; *see* ECF No. [1] ¶¶ 44–51, 58–64.  Additionally, they argue that they lay out the legal theories supporting the Colombian actions in the Application.  ECF No. [16] at 20.  Specifically, Applicants state that the Declaration of Mr. Barragan was provided "for the sake of completeness" and leaves no doubt that these actions are within "reasonable contemplation" and for use in the contemplated ICC proceeding and in the foreign Colombian actions.  *Id.* at 20–21.

Respondents counter that Applicants fail to demonstrate in their original Application that neither the contemplated ICC proceeding, nor any Colombian actions were within "reasonable contemplation."  ECF No. [23] at 11–13.  Respondents state that the contemplated ICC proceeding is "merely a contingency plan" to be filed only if an award in the pending ICC arbitration is not complied with.  *Id.* at 13.  Likewise, Respondents argue that the Colombian actions are not reasonably contemplated.  *Id.* at 11–13.  As an initial matter, Respondents state that Applicants should not be permitted to cure the deficiency in the Application by using Mr. Barragan's Declaration, and ask that it be stricken.[2]  *Id.* at 11.  Nevertheless, Respondents maintain that even considering the Declaration, Applicants have failed to demonstrate that the contemplated

---

[2] Respondents contend that Applicants improperly introduced the Declaration of Mr. Barragan in violation of Local Rule 7.1(c), which limits a reply memorandum to only rebuttal of matters in the response without re-argument of matters covered in the movant's initial motion.  ECF No. [23] at 11.  However, "'affidavits and declarations [attached to a reply brief] may contain facts not previously mentioned in the' underlying motion, 'as long as the facts rebut elements of the opposition memorandum and do not raise wholly new factual issues.'"  *Baltzer v. Midland Credit Mgmt., Inc.*, No. 14-20140-CIV, 2014 WL 3845449, at *2 (S.D. Fla. Aug. 5, 2014) (quoting *Giglio Sub S.N.C.*, 2012 WL 4477504, at *2).  Because the undersigned finds that the Colombian actions are not "reasonably contemplated," it sees no reason to strike it from the record.

Colombian actions are within reasonable contemplation.  *Id.*  They argue that Mr. Barragan is unable to show that he has taken any objective steps in furtherance of the actions other than that he was retained to perform the "analysis, drafting and representation" for those action, which Respondents argue is insufficient.  *Id.* at 12 (citing ECF No. [16-1] ¶¶ 32–33).  Respondents state that because the Colombian actions were not within "reasonable contemplation" it is impossible that the requested discovery could be for "use" in any of these potential Colombian actions.  *Id.* at 11–13.  Further, even if the Court finds that the Colombian actions are reasonably contemplated "proceedings," the information may not be ultimately "used" for two reasons.  *Id.* at 13–15.  First, they state that any dispute derived from or related to the Stock Purchase Agreement must be arbitrated pursuant to Section 12.06 of the Stock Purchase Agreement rather than going through the SIC or Colombian courts.  *Id.* at 13–14.  Second, Respondents state that the "contemplated" actions before the SIC for unfair competition and anticompetitive conduct are barred by the applicable statues of repose.  *Id.* at 14.

First, the undersigned finds that the contemplated ICC proceeding does not meet the requirements of § 1782 in that it is not a proceeding within a reasonable contemplation.  Indeed, that proceeding would only be commenced *after* the resolution of the pending ICC arbitration, a date which is not ascertainable at this time, and only *if* there is an award in the pending ICC arbitration that is not complied with such that another arbitration would be necessary.  The contemplated ICC proceeding is simply too speculative relying on both a particular ruling from the pending ICC arbitration and the non-compliance of said order.  As such, the undersigned finds that the matter does not satisfy the requirements of § 1782.

Second, as to the contemplated Colombian actions, the undersigned finds that they do not meet the statutory definition of § 1782 because they are not reasonably contemplated.  As an initial

matter, it is important to note that Applicants' theory of the case, either before the SIC or before Colombian civil courts, rests on their argument that they, as part of the Sellers group, sold their shares in Lafrancol to CFR at a lower price than they should have and that CFR knew those shares were worth considerably more given that CFR was already discussing the sale of those shares with Abbott. *See* ECF No. [16-1] ¶¶ 33–34. In short, had they known that Abbott intended on buying at such a high price they may not have sold it to CFR at the price they negotiated. Although there does not appear to be anything more than this theory, Applicants state that they will pursue penalties against former CFR officers and Abbott for "anticompetitive actions" under Colombian Law 1340 of 2009, article 25. *Id.* ¶ 33. They intend to file separate civil actions for Abbott's breach of its duty of good faith, under Article 863 of the Colombian Commercial Code, and retention of the security deposit by former CFR officers, Abbott, and the Buring Siblings under Article 2341 of the Colombian Civil Code. *Id.* ¶¶ 34–35.

The Application fails to outline anything more than their theory for pursuing these actions. Indeed, there is no discussion as to how the laws they cited will apply to their current theory nor is there any discussion of what evidence they have to support their theory of the case. Indeed, although Mr. Barragan has been acting as lead counsel for the Sellers against CFR and Lafrancol since 2013, none of the above-mentioned actions in Colombia have been drafted nor is there a timeframe as to when Applicants expect to commence these actions. *Id.* ¶¶ 7, 9–10.

At the hearing, Applicants stated that they needed the evidence requested through the Application to submit a complaint; however, it cannot be enough to state as much in order to prevail. Indeed, this is not the case where the Applicants have been able to articulate a cause of action where necessary information is in the hands of a respondent. Instead, Applicants have a theory and in hopes of substantiating their theory are seeking discovery. Indeed, Applicants have

not set forth why they believe that CFR and Abbott were in discussions before the Sellers sold

their shares to CFR nor is it entirely clear how that raises to a cause of action against Abbott or

CFR.  Applicants' argument that in civil law countries, such as Colombia, evidence is needed in

order to commence proceedings is also unavailing.[3]  As the undersigned understands it, Applicants

would certainly be required to provide their evidence at the time of filing in Colombia.  However,

that does not mean that discovery is unavailable after filing.  Indeed, the Declaration of Mr.

Barragan does not explain why the information obtained through the Application must be acquired

before the filing.  ECF No. [16-1].  Instead, the Declaration only states that the information

requested in the Application "will assist Sellers' case." *Id.* ¶ 36.  Without any more specificity

from Applicants, this is nothing more than a fishing expedition for documents that may or may not

support Applicants' case theory.  *See In re Request for Assistance for Ministry of Legal Affairs of*

*Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on other grounds by Intel*,

542 U.S. 241 ("If the judge doubts that a proceeding is forthcoming, or suspects that the [Section

1782] request is a 'fishing expedition' . . . the district court should deny the request.").

In *Consorcio Ecuatoriano*, for example, the Eleventh Circuit based its decision to grant the

§ 1782 application on "reliable indications" that a proceeding was forthcoming.  747 F.3d 1262 at

1270.  There, the petitioner already knew the parties to the proceeding in Ecuador—two former

employees—and the factual basis for the proceeding was based on an internal audit and

investigation.  *Id.*  Moreover, the petitioner: (1) explained in the Application and Memorandum of

Law that they conducted an extensive internal investigation and audit regarding the processing of

---

[3] The undersigned notes that the Supreme Court in *Intel* acknowledged that "[i]n civil law countries, documentary evidence is generally submitted as an attachment to the pleadings or as part of a report by an expert." 542 U.S. at 262 n.14 (quoting Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L. Rev. 215, 235–36 n.94 (1994)).  Again, as noted above, that is far from the proposition that evidence must be collected before and submitted with the pleadings.

invoices by two former employees that resulted in overpayment and monetary losses to petitioner; (2) submitted a sworn Declaration by the petitioner's Legal and Compliance Director that there was "possible indicia of liability against two former executives of [petitioner];" (3) intended to commence a civil action against the former employees; and (4) that under Ecuadorian law, the petitioner was required to submit its evidence with the initial pleadings.  *Id.* at 1270–71.  In contrast, Applicants here have not clearly indicated who they intend to name as parties in the Colombian actions.  In Mr. Barragan's Declaration he mentions Applicants intend to file actions against CFR and Abbott officers as well as the Buring siblings; however, Mr. Barragan does not state whether Abbott would even be a party.  ECF No. [16-1] ¶¶ 32, 35.  Also, while the petitioners in *Consorcio Ecuatoriano* had facts supporting their claims based upon an internal audit and investigation, Applicants appear to rest their claims on a theory, failing to offer the Court anything more than that.  Indeed, Mr. Barragan's Declaration states that "the commencement of this action and its competent court will be determined once it is established, based on the evidentiary materials gathered in the Section 1782 Application, what is the extent of the contacts held between CFR and Abbott and Michael and/or Viviane Ventura." ECF No. [16-1] ¶ 35.   In short, the point of the discovery is not for use in a contemplated, proceeding, but rather, it is to see if there is any merit to their theory.

Finally, because this Court finds that the "proceeding" requirement is not met, the discovery requested cannot be "for use" in these proceedings.  *See In re Ferrer*, 2018 WL 3240010, at *5 (in order to satisfy the "for use" statutory requirement Applicant must be able to "inject the requested information into a foreign proceeding") (quoting *Mees*, 793 F.3d at 298).[4]

---

[4] Respondents' two other arguments as to why the discovery cannot be "used" in the Colombian actions—that the Stock Purchase Agreement must be arbitrated pursuant to Section 12.06 of said agreement and that the statute of repose has lapsed on the SIC actions—require this Court to

**B. Even If The Application Met the Statutory Requirements, The *Intel* Discretionary Factors Weigh Against Granting The Application.**

Even if the Application did meet the statutory requirements of § 1782, the statute "authorizes, but does not require, a federal district court to provide assistance . . . ." *In re Clerici*, 481 F.3d at 1331 (citing *Intel*, 542 U.S. at 255).  In exercising this discretion, the undersigned applied the four discretionary *Intel* factors and concluded that the factors weigh against granting the Application in both the pending and the contemplated ICC proceedings and in the contemplated Colombian actions.

**1. The Intel Discretionary Factors Weigh Against Granting The Application As To The Pending ICC Arbitration.**

The discretionary *Intel* factors do not support the Application as to the pending ICC arbitration.  The first factor asks the Court to weigh whether "'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant.'"  *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264−65).  Here, Applicants are seeking documents from "Abbott Laboratories, Inc." which has access to the relevant documents located in Abbott's

_____

interpret both the Stock Purchase Agreement and Colombian law.  ECF No. [23] at 13–15.  Given the findings above, the Court need not resolve these issues.  However, even if the Court were inclined to review them, the Court would be unable to given the lack of detail provided by Applicants as to the causes of action.  *See In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) ("…in deciding whether this statutory requirement is met, we need 'not attempt to conduct a detailed analysis of foreign law,' but rather focus on 'the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts.'").  Without a clearer picture of the causes of actions and parties, determining whether the matter would be compelled to arbitration or otherwise procedurally defective in Colombia is not possible.

Latin American Headquarters in the Southern District of Florida.[5]   ECF No. [1] ¶¶ 67–72.   It is likely that at least one of the Respondents in the pending ICC proceeding, particularly Respondent Abbott Laboratories (U.S.), has access to these documents since they are allegedly located in the U.S.   If Abbott Labs (U.S.), or any of the other Respondents, can produce these documents in the pending arbitration, this weighs against granting the § 1782 Application.

The second factor requires that the Court consider the "'nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance.'"   *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65).   Because the arbitral panel has not yet convened, the Court cannot determine receptivity one way or another.   Indeed, at least one court has rejected using § 1782 assistance in instances where arbitral panels were not fully assembled and there is no evidence about the panel's receptivity to the requested materials.   *In re Dubey*, 949 F. Supp. 2d at 996–97.   The Court finds this factor weighs against granting the application.

The third factor is whether the § 1782(a) request "'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'"   *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65).   Here too, because the arbitral panel has not convened, any potential proof-gathering restrictions have yet to be established.   In *In re Jagodzinski*, the Court noted that, although it is not required, immediately seeking U.S. assistance, rather than consulting the foreign or international tribunal, "raises the specter of abusive litigation tactics."   2019 WL 1112389, at *7.   The Court finds that this factor also weighs against granting the Application.

---

[5] Applicants state that Abbott's regional headquarters in Miami, Florida, supervised and oversaw Abbott's Latin American operations, including those of Abbott Chile and Abbott Colombia.   ECF No. [1] ¶ 69.

The fourth factor considers whether the Application contains "'unduly intrusive or burdensome requests.'"  *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264−65). Respondents did not raise any arguments regarding the fourth *Intel* discretionary factor, but rather reserved their right to object on the burdensomeness of the requests should the Application be granted.  ECF No. [9] at 35, n.7.  Based upon the Court's own review, the undersigned finds the discovery request to be expansive and overbroad considering that the pending ICC dispute concerns only the release of the security deposit.

### 2. The Discretionary *Intel* Factors Also Weigh Against Granting The § 1782 Application As To The Contemplated ICC Arbitration.

Even if the statutory factors were met, the discretionary factors weigh against granting the Application as to the contemplated ICC proceeding.

The first factor, whether the person from whom discovery is sought is a participant in the foreign proceeding, is impossible to determine because the participants in the contemplated ICC arbitration are still undefined.  Indeed, the contemplated ICC arbitration would only be filed *if* there was a judgment in the pending ICC arbitration and *if* judgment was not complied with, and as such, who that party might be is not even known.  The second factor asks the Court to consider the nature of the foreign tribunal or its receptivity to judicial assistance; however, this factor cannot be weighed because the panel has not been convened.  Similarly, the Court cannot weigh the third factor about whether any proof-gathering restrictions are being circumvented, again because the arbitration will not even be filed unless the pending arbitration results in an order in Applicant's favor.  Finally, it is not possible to evaluate the fourth factor regarding whether the requests are unduly intrusive or burdensome because the Court does not know the subject matter of the contemplated ICC arbitration, other than it would be for enforcement of some order that has not

yet been issued.  For these reasons, the discretionary *Intel* factors weigh against granting the Application in the contemplated ICC arbitration.

> **3.   The Discretionary *Intel* Factors Also Weigh Against Granting The § 1782 Application As To Either Contemplated Colombian Action.**

Even if the Application met the § 1782 statutory requirements for the Colombian actions, the discretionary *Intel* factors do not favor granting the Application.  Specifically, because the Court lacks sufficient information regarding the actions and claims that Applicants intend to file in Colombia, including who the parties will be, an evaluation of the discretionary *Intel* factors is particularly difficult.

The first factor, whether discovery sought in the § 1782 Application is from a party in the foreign proceeding, weighs strongly against granting the Application.  Applicants have not provided a draft complaint or articulated which individuals or specific Abbott entities they plan to name in their actions within Colombia—either before the SIC or before the civil courts.  *See* ECF No. [16-1].  For example, if Applicants choose to name Abbott's Colombian entity in the proceedings, which may be the case, there is no evidence in the record to suggest that Applicants would not be able to seek the requested discovery through that entity as part of their proceeding. This factor, therefore, weighs against granting the Application.

The second factor concerns the nature of the foreign tribunal, character of the proceedings, and its receptivity to judicial assistance.  Applicants cite to *In re Pimenta*, 942 F.Supp.2d 1282 (S.D. Fla. 2013) in support of their argument that this factor weighs in favor of granting the Application because there is no evidence that the SIC or Colombian courts would be opposed to discovery though the § 1782 Application.  ECF No. [1-1] at 31.  Indeed, in Mr. Barragan's Declaration, he states that both the SIC and Colombian civil courts will be receptive to the discovery obtained through the Application.  ECF No. [16-1] ¶¶ 48–49.  As there is no evidence

that the SIC or Colombian courts would not be receptive, then "'a district court's ruling should be informed by Section 1782's overarching interest in providing equitable and efficacious procedure for the benefit of tribunals and litigants . . . .'" *In re Jagodzinski*, 2019 WL 1112389, at *6 (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995)).  This factor weighs in favor of granting the Application.

The third factor is whether the § 1782 Application conceals an attempt to circumvent proof-gathering restrictions in the United States or in the foreign country.  Applicants argue that this factor weighs in favor of discovery being granted because Colombia does not oppose a party seeking discovery in a court outside Colombia.  ECF No. [1-1] at 32.  In support, Applicants cite to *In re Application of FG Wilson (Eng'g) Ltd. for Ex Parte Order to Obtain Discovery For Use in Foreign Proceedings*, No. 10-20839 CIV, 2011 WL 1114311, at *5 (S.D. Fla. Jan. 4, 2011), *report and recommendation adopted sub nom. In re FG Wilson (Eng'g) Ltd.*, No. 10-20839-MC, 2011 WL 1115359 (S.D. Fla. Mar. 24, 2011), holding that "Col[o]mbian Civil Procedure Code does not require that a party first seek discovery through a Col[o]mbian courts [sic] before being able to make an application for discovery in a court outside of Col[o]mbia." *Id*.  Respondents argue that the SIC and Colombian courts should have been first given the opportunity to address discovery before resorting to a § 1782 application.  ECF No. [9] at 32–33.  While it is true that Colombia does not oppose a party seeking discovery outside of Colombia, this is not the only consideration.  Although it is not required to first consult with the foreign tribunal, immediately seeking U.S. assistance in a § 1782 application "raises the specter of abusive litigation tactics." *In re Jagodzinski*, 2019 WL 1112389, at *7.  The Court is hesitant to grant discovery under § 1782 before the nature of the suit is more specifically articulated because Applicants do not state (1) that they cannot file their actions without the documents requested in discovery, (2) why these

documents could not be submitted after filing, or (3) why the SIC or a Colombian civil court would not be able to order discovery of these documents.  Parties should not be permitted to use § 1782 to "'jump the gun' on discovery in the underlying foreign suit."  *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005).  For these reasons the Court finds that this factor weighs against granting the Application.

The fourth *Intel* discretionary factor is whether the request is unduly intrusive or burdensome.  Respondents reserved their right to object should the Application be granted.  ECF No. [9] at 35 n.7.  The Court engaged in its own review of the document requests and finds that although the Colombian actions concern a broader range of topics than the ICC proceedings, which focus on the security deposit, the discovery requested is still very broad and largely irrelevant in the Colombian actions.  However, given that the Court has not seen a draft complaint or a clear articulation of the claims it is unclear how these document requests could be appropriately tailored at this time.  Therefore, the fourth *Intel* discretionary factor weighs against granting the Application.[6]

## IV.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that the Application, ECF No. [1], be **DENIED**, and the Cross-Motion to Dismiss the Application, ECF No. [9], be **GRANTED**.

## V.    OBJECTIONS

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, Chief United States District Judge.  Failure to timely file objections shall bar

---

[6] If the District Court declines to adopt this Report and Recommendation, a discovery hearing to address the scope of the request should be held to address how the specific requests would be proper for the proceedings at issue.

the parties from *de novo* determination by the District Court of an issue covered in the report and recommendation shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

   **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 5th day of November, 2020.

_____
JACQUELINE BECERRA
United States Magistrate Judge